85 So.2d 351 (1956)
Frank J. SMITH et al., Plaintiffs-Appellants,
v.
Morris ANISMAN, Defendant-Appellee.
No. 8395.
Court of Appeal of Louisiana, Second Circuit.
February 2, 1956.
Forrest F. Foppe, Shreveport, for appellants.
Jackson, Mayer & Kennedy, Shreveport, for appellee.
GLADNEY, Judge.
Plaintiffs are the alleged owners in fee of one hundred twenty (120) acres of contiguous property situated in Caddo Parish, Louisiana, inherited from their ancestors, Abe Smith and Edith Smith, and have brought this suit to have canceled from the records of Caddo Parish an instrument dated August 27, 1941, wherein Edith and Abe Smith sold to the defendant, Morris Anisman, an undivided one-sixth (1/6) of all oil, gas and other minerals in and under the aforesaid property. Suit was filed on August 6, 1954, and was met with exceptions of no cause and no right of action. After hearing, the exceptions were maintained and plaintiffs' demands rejected, hence this appeal.
Upon trial of the exceptions counsel representing plaintiffs and defendant stipulated and agreed as follows:
"That the document marked `Exhibit A', attached hereto and made a part hereof, is a certified copy of the Mineral Deed dated August 27, 1941, recorded August 29, 1941 in Conveyance Book 451, page 207, which the *352 defendant, Morris Anisman, acquired from the then owners of the affected lands, namely, Edith Bradford Smith and Abe Smith, authors in title of plaintiffs herein and for the purpose of trying the exceptions and pleadings herein conveyed an undivided one-sixth (1/6) of the oil, gas and minerals under the East Half of the Southwest Quarter and Southeast Quarter of Northwest Quarter (E/2 of SW/4 & SE/4 of NW/4) of Section 35, Township 21 North, Range 15 West, Caddo Parish, Louisiana.
"The parcels of land described in said Deed are regular governmental subdivisions of approximately forty (40) acres each in place.
"On or about November 2, 1949, J. A. Funston, et al, of Monroe, Louisiana, with the knowledge and consent of defendant and other mineral owners, began the drilling of a well in the Southeast Quarter of the Northwest Quarter of Section 35, Township 21 North, Range 15 West in search of oil and gas at a location 1466 feet East and 2485 feet South from the Northwest corner of Section 35, Township 21 North, Range 15 West, Caddo Parish, Louisiana under Permit No. 23969 from the Department of Conservation of the State of Louisiana. Said well was drilled in good faith by the operators to a depth of 2400 feet which was a sufficient depth to test the Woodbine Formation, which formation was and is the deepest formation from which oil and gas have been produced in the area of said well in Caddo Parish, Louisiana. The well was plugged and abandoned by the operators in December of 1949.
"It is stipulated that there was no oil, gas or minerals produced from the described lands for a period of ten (10) years beginning August 28, 1941.
"That there are presently some twelve (12) wells located on the land described above which are now and have been for approximately two (2) years producing oil, gas and minerals in paying quantities from what is known as the Chalk Formation at a depth of approximately 1600 feet. Said wells were completed by the operators under sandfracting process which was not known or utilized by the industry prior to the year 1949."
The instrument which plaintiffs seek to have canceled of record bearing date of August 22, 1941, purports to be a conveyance from Edith Bradford Smith and Abe Smith to Morris Anisman of:
"One-sixth (1/6th) of the Oil, gas and other minerals, in and under and that may be produced from the following described lands situated in the Parish of Caddo, Louisiana:
"The East Half (E½) of Southwest Quarter (SW¼) and the Southeast Quarter (SE¼) of Northwest Quarter (NW¼), Section Thirty-Five (Sec. 35), Township Twenty-One (21) North, Range Fifteen (15) West, containing one hundred twenty (120) acres, more or less.
"It is the intention of Grantors to convey twenty (20) full mineral acres under the above described tract of land.
"It is understood between the parties hereto that this sale is made subject to any valid and duly recorded oil and gas lease, but covers and includes one-sixth (1/6th) of all the oil royalties and gas rentals or royalties due and to become due under the terms of any such lease, and a like interest in all money rentals that may be hereafter paid in order to keep such lease in effect without drilling."
Plaintiffs' petition also alleges that at the time of the conveyance to Anisman on August 27, 1941, there was in existence an oil and gas lease dated June 5, 1939, affecting the property herein involved, which lease was executed by Abe and Edith Smith in favor of A. G. Tullis for a term of ten years.
*353 Counsel for plaintiffs and appellants herein so states his legal contention:
"That as shown hereinabove the only lease in existence at the time of the execution of the aforesaid royalty deed in favor of defendant was the aforementioned lease in favor of A. G. Tullis; that therefore, in the absence of production of oil, etc., defendant only acquired the right to share in the oil, gas, and other minerals if and when they were produced within the five years remaining under the Tullis lease, since as shown hereinabove five years had already spent themselves without any production of oil, gas or other minerals.
"That since there was no production of oil, etc. within the aforesaid five years remaining under the Tullis Lease, and since there had been no production of oil, gas and other minerals during the five years preceding defendant's royalty deed, all rights and interests that defendant might have acquired under the aforesaid royalty deed were lost in the year of 1946."
Counsel for appellee, on the other hand, asserts appellants' position is untenable for the reason that defendant acquired minerals and mineral rights and not merely royalty and royalty rights under the instrument dated August 27, 1941. And, furthermore, forasmuch as the petition and stipulation show that on November 2, 1949, there was a good faith drilling of a well on the subject property with the knowledge and consent of the mineral owners, that operation was sufficient to interrupt the running of the ten year prescription against the mineral servitude.
The first question for our determination is whether or not the deed to Anisman was in fact a sale of mineral rights, and not merely a sale of royalty. The instrument itself evidences in unmistakable language that "one-sixth (1/6th) of the oil, gas and other minerals" was conveyed and to make the meaning even clearer the parties inserted the following:
"It is the intention of grantors to convey twenty (20) full mineral acres under the above described tract of land."
We are of the firm opinion that Anisman acquired mineral interests and not merely royalty rights. In one of the more recent judicial expressions on this subject, the Supreme Court in Horn v. Skelly Oil Company, 1954, 224 La. 709, 70 So.2d 657, 660, said:
"The contention of the defendants that the reservation by the bank in the deed to McRae was a royalty, as contradistinguished from a mineral interest (predicated principally upon the bank's failure to specifically reserve to itself the right of ingress and egress for purposes of exploration), is clearly without merit. The bank in unmistakable language reserved unto itself `a one-half interest in and to all minerals and mineral rights in and under the above described property.' Such a reservation under our long recognized and established jurisprudence constitutes a servitude imposed upon the land, giving the owner thereof the right of ingress and egress for the purpose of exploring for and reducing to possession the minerals under the property so burdened. The so-called proviso following instead of having the effect of reducing the interest thus reserved to a mere royalty, as contended by the defendants, is, in fact, a mandate coupled with an interest under which the land bank granted McRae the privilege of leasing the bank's reserved mineral interest under certain specified conditions, as hereinabove set out. Of necessity, only the owner of the minerals has the right to grant such leasing privileges. See Gulf Refining Co. v. Goode, 212 La. 502, 32 So.2d 904; Long-Bell Petroleum Co. v. Tritico, 216 La. 426, 444, 43 So. 2d 782; Sanders v. Flowers, 218 La. 472, 49 So.2d 858; Smith v. Holt, 223 La. 821, 67 So.2d 93."
*354 It must be conceded that had Anisman merely purchased the right to receive royalties, and since oil, gas or minerals were not produced from the lands affected for a period of ten years, beginning August 27, 1941, mere drilling of a non-productive well during that period of time would not have had the effect of interrupting the ten year prescription. See: Union Sulphur Company, Inc. v. Lognion, 1947, 212 La. 632, 33 So.2d 178; Union Sulphur Company, Inc., v. Andrau, 1950, 217 La. 662, 663, 47 So.2d 38. But the rule is contrariwise where the servitude has been created by a grant of mineral rights, for the right to the continued use of the servitude is not dependent upon development resulting in production of oil, gas and minerals, unless made so by contract. LSA-C.C. arts. 656, 657 and 3546; Keebler v. Seubert, 1901, 167 La. 901, 120 So. 591; Frost Lumber Industries v. Federal Petroleum Company, D.C. 1940, 29 F.Supp. 957, certiorari denied 311 U.S. 676, 61 S.Ct. 43, 85 L.Ed. 435; Lynn v. Harrington, 1939, 193 La. 877, 192 So. 517; Ohio Oil Company v. Cox, 1940, 196 La. 193, 198 So. 902; Hunter Company, Inc., v. Ulrich, 1942, 200 La. 536, 8 So.2d 531; Standard Oil Company of Louisiana v. Futral, 1943, 204 La. 215, 15 So.2d 65; Mays v. Hansbro, 1953, 222 La. 957, 64 So.2d 232.
The owner of the minerals, oil and gas in a tract of land possesses a real right in the nature of a personal servitude to go upon the land and explore for oil or gas and possess such oil or gas as may be produced. The manner in which and the parties through whom this use of the servitude is exercised is not strictly circumscribed. LSA-C.C. art. 793, states:
"To preserve the right of servitude and prevent prescription from running against it, it is not necessary that it should be exercised exclusively by the owner to whom it is due, or by those who use his rights, or who represent him directly, as the usufructuary, the lessee or tenant, the attorney in fact or agent. It suffices if the servitude has been exercised by workmen employed by the owner, or by his friends, or those who come to see him."
Considered in the light of the aforementioned authorities, the judgment of the court a quo is correct. Defendant acquired a real right incidental to which was the right to go upon and explore the land described in his grant for the purpose of discovering oil or gas. The mere use of the right to so explore, even though not successful, under the uniform jurisprudence of this state, constituted an interruption of the ten year prescription liberandi causa imposed by LSA-C.C. art. 3546. Therefore, it follows that when a bona fide attempt to drill was made on November 2, 1949, that operation breathed further life into the mineral deed held by Anisman and it was in full force and effect when wells drilled during the year 1952 produced oil and gas.
For the foregoing reasons the judgment from which appealed is affirmed at appellants' cost.