PRICE, Judge.
This appeal involves the interpretation of the conveyance clause in two mineral deeds which describes the interests sold by a fraction, and thereafter declares the intent to convey a specific number of mineral acres which conflicts with the fractional interest first expressed.
On June 10, 1963, Etta May Baxley, the owner of an undivided one-third fee interest in a tract of land in Sections 22 and 23, Township 19 North, Range 14 West, Caddo Parish, Louisiana, executed a mineral deed conveying to Dr. C. S. Sentell a portion of her mineral interest in the property. (This tract has been designated as “Tract 1” in briefs to this court and it shall be referred to hereafter in this manner). On November 15, 1963, Mrs. Baxley, who owned an identical undivided fee interest in a tract in Sections 19, 23, 25 and 26, Township 19 North, Range 14 West, and Section 19, Township 19, Range 13 West, of Caddo Parish, executed a second mineral deed conveying to Dr. Sentell a part of her mineral interest under this tract. (This tract has been referred to as “Tract 2” by the litigants and will also be so designated in this opinion for convenience.)
At the time of these mineral sales each of the tracts was subject to a mineral lease providing for the standard one-eighth royalty and an additional one-sixteenth overriding royalty to the lessors. Mrs. Baxley therefore owned a royalty interest of one-third of (Vs-VVia) or one-sixteenth.
The mineral deed executed on June 10, 1963, affecting Tract 1, described the interest conveyed thusly:
“ * * * one-sixteenths of eight-eighths (He of %ths) of the oil, gas and other minerals, in and under and that may be produced from the following described lands situated . . . (property description omitted) approximately 366 acres, more or less.
“It is the intention of Vendor to convey and Vendee to purchase sixty-one (61) mineral acres in and under the above described lands.”
The instrument acknowledges the sale is subject to an existing oil and gas lease and specifies it “covers and includes 61 mineral acres (Jieths of %ths) of all the oil royalties and gas rentals or royalties due and to become due under the terms of the lease, and a like interest in all money rentals that may be hereafter paid in order to keep the lease in effect without drilling.”
The mineral sale dated November 15, 1963, involving Tract 2, was prepared with substantially the same provisions as the sale for Tract 1 and it recites a conveyance of “Via of %ths” of the minerals. The sole difference from the prior sale is that the total estimated acreage is 940 and the intent is expressed to buy and sell 156.-67 mineral acres.
Shortly after execution of these mineral sales Mrs. Baxley died. In the year 1970 the two tracts involved began producing oil as part of the Sentell Field of Caddo Parish.
Plaintiffs, who are heirs of Mrs. Baxley and their vendees, brought this action for a declaratory judgment seeking clarification *871 of the mineral ownership which emanates from the sales by Mrs. Baxley to Dr. Sen-tell.
The original defendants named in the action in addition to Dr. Sentell, are the lessees of all the various mineral interests in the tract and the purchaser of the crude oil. As Dr. Sentell died subsequent to trial but prior to rendition of judgment, his widow and heirs were substituted as parties in his place. Crowson Well Service, Inc. and B. C. McKeever, although named as defendants, have aligned themselves with plaintiffs in responsive pleadings and in trial of the matter. Therefore, the controversy is principally between plaintiffs and the Sentell heirs together with those deriving rights through leases granted by Dr. Sentell. For simplicity, when it is necessary to refer collectively to those parties in opposition to plaintiffs, they will be referred to as the “Sentell group.”
Plaintiffs allege a dispute has arisen between themselves and the Sentell group as to the extent of the mineral interest transferred under the two mineral deeds in question. Plaintiffs contend a one-sixteenth undivided interest in a mineral servitude was created as set forth by the numerical fraction provided in the conveyance clause of each of these mineral deeds.
The Sentell group contend the conveyance was intended to be a designated number of mineral acres under each of the tracts and that the numerical fraction ‘%th of %ths” had reference to the amount of royalty anticipated from the existing leases on each property. They contend the mineral acres should be transformed into an undivided fractional interest in the mineral servitude by using the number of mineral acres provided as the numerator and the total acreage of the tract as the denominator to arrive at the fractional interest conveyed. To accord with this position the fractional undivided interest conveyed would be approximately one-sixth (%th) as opposed to the one-sixteenth (146th) as contended by plaintiffs.
After trial on the merits the district court concluded the interest conveyed in both sales to be a one-sixteenth of the minerals under the tracts involved and judgment was rendered defining the mineral ownership of the various parties affected by these mineral sales in accord with this finding.
All parties referred to herein as the Sen-tell group have appealed from this judgment.
In written reasons for judgment the trial judge found the conveyance by undivided fractional interests irreconcilable with the reference to “mineral acres” and concluded the fraction being a clear, concise, definite description, it should prevail over the other clause referring to mineral acres which is of uncertain meaning. The court further found the evidence to show the written agreements were prepared at the direction of the vendees’ agent and therefore any ambiguity therein should be construed against him under the provisions of LSA-C.C. Art. 1958.
Testimony offered by appellants seeking to explain the ambiguity by showing the true intent of the parties was ruled inadmissible by the trial judge. This evidence was entered in the record under an offer of proof.
On this appeal appellants assign the following errors to the holding of the trial court:
1. The court disregarded and attached no meaning to the term “mineral acre” as set forth in the deeds.
2. The court refused to admit parol testimony to explain the meaning of the terminology or the intention of the parties when the terms used are susceptible to more than one meaning.
3. The court failed to give meaning to all provisions of the instrument and disregarded the provisions of LSA-C.C. Art. 1951 mandating that a clause susceptible of two interpreta *872 tions must be construed in such a manner to give it some effect rather than render it meaningless.
4. The court should not have ruled that the ambiguities and inconsistencies should be construed against the vend-ee, Dr. Sentell, under Article 1958.
There can be no doubt that the two documents involved were inarticulately drawn and contain inconsistent provisions relating to the mineral interest conveyed. Therefore, parol evidence is admissible under the circumstances to clarify the ambiguity or to show the true intention of the parties. LSA-C.C. Art. 2276.
Although we are of the opinion the trial court should have ruled the parole evidence admissible, after a review of the entire offer of proof we do not find this evidence sufficient to change the conclusions reached by the trial judge. This evidence shows the transaction was handled on behalf of Dr. Sentell by J. H. Gilbert, whose occupation at the time was buying and selling mineral rights and leases in this area. After making an agreement with Mrs. Baxley on each occasion he had the mineral sale deed form completed under his directions at a Bank in Houston to consummate the sale. Mrs. Baxley was an elderly person residing in a nursing home in Houston. Gilbert and Dr. Sentell each testified they intended to purchase one-half of the mineral interest, then thought to be owned by Mrs. Baxley, which would have been an undivided one-sixth interest in the two tracts. They further testified the consideration was calculated on the basis of $20 per mineral acre. Thus the total consideration for the sale on Tract 1 was $1,220 (61 mineral acres) and $3,133.33 for Tract 2 (156.67 mineral acres). The explanation given for use of the fraction “Vie of %” rather than in the description of the interest being conveyed was the desire of the vendee to make certain he was receiving a portion of the anticipated royalty under the existing mineral lease.
In support of their position, appellants introduced in their offer of proof a bank draft in payment of the consideration of the sale on Tract 1 on which instrument it is written “For 61 undivided mineral acres located. . . This is the strongest evidence in appellants favor. However, we do not consider this evidence, together with the parole testimony of Dr. Sentell and Gilbert, sufficient to sustain the burden resting on appellants to show there was an intent on the part of the vendor as well as the vendee to buy and sell under the formula of “mineral acres” rather than the fractional proportion first expressed in the conveyance.
Plaintiffs and appellants devote considerable argument in brief to this court on the acceptability of the term “mineral acre” as a descriptive unit in a mineral sale in Louisiana. Suffice it to say the term has usage in the oil industry but does not have a simple, definite meaning which is easily understood by a person who has little or no experience in the sale of minerals.
The authorities relied on by appellants in their contention the recited intended mineral acres should be given more weight than the conflicting fractional interest are from common law jurisdictions or treatises citing common law cases. Appellants cite extensively from Williams and Myers, Oil and Gas Law, giving the definition contained therein of a mineral acre and the variable methods of calculating a mineral interest by a conveyance utilizing this term. However, it is to be noted that only two Louisiana cases have been cited that have used the term. Smith v. Anisman, 85 So.2d 351 (La.App., 2d Cir. 1956), was a case from this court in which the question was whether the conveyance was of a mineral royalty or a mineral servitude. Since the parties mentioned an intent to convey so many mineral acres, the court used this reference to find an intent to sell an interest in a servitude.
The other case is Melancon v. Cheramie, 138 So.2d 138 (La.App., 1st Cir. 1962) *873 which also dealt with the question of royalty versus mineral servitude. Neither case had at issue a conveyance by “mineral acres” and could not be construed as condoning a conveyance by undivided mineral acre.
Appellants do not contend there was any error in the insertion of the “Vie" instead of but rely entirely on their position that this fractional designation was intended to refer to royalty interest only and the conveyance of the undivided interest in the mineral servitude was expressed by the number of mineral acres intended to be sold.
This argument leads to an additional conflict as the clause in each mineral sale acknowledging the existence of a lease provides the vendee is to receive Vie of % of all the royalty due under the lease. The royalty due under the leases then in effect to the three co-owners of the property, including their override, was %e. Therefore, vendee would only have received Yie of %6ths under this provision. Had he purchased one-half of Mrs. Baxley’s mineral interest (a % interest) he would have been entitled to a %th of all the royalty under the leases and this clause in the instrument should have so provided to be consistent.
We do not find the application of the principles of construction set forth in LSA-C.C. Arts. 1951, 1945, 1948, 1950 and 1955, cited and relied on by appellants, to have been violated by the trial court.
Appellants particularly rely on Article 1951, which provides: ■
“When a clause is susceptible of two interpretations, it must be understood in that in which it may have some effect, rather than in a sense which would render it nugatory.”
This article cannot be applied without rendering one or the other of the conflicting provisions nugatory. They cannot logically be reconciled and it devolves into a question of which clause should be given preference.
We agree with the trial judge’s conclusion that the provisions of LSA-C.C. Art. 1958 are appropriate to the circumstances presented. This article provides as follows:
“But if the doubt or obscurity arise for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted, whether he be obligor or obligee.”
Dr. Sentell’s agent, Gilbert, is solely responsible for the doubt and ambiguity which has arisen and the construction most favorable to plaintiffs must therefore be adopted.
Appellants contend LSA-C.C. Art. 2474 providing an obscure clause or ambiguity should be construed against a seller should be applied rather than Article 1958. From an examination of the jurisprudence interpreting Article 2474, we observe it only has been applied to circumstances where the seller or vendor has prepared or been responsible for preparing a written sales agreement. Therefore, Article 2474 has no application to the instant case.
For the foregoing reasons we conclude there is no error in the judgment appealed from defining the mineral ownership under the two tracts specifically and fully described therein, and it is therefore affirmed at appellants’ cost.
Before AYRES, BOLIN, PRICE, HALL and WILLIAMS, JJ.