313 So.2d 803 (1975)
James Millard LIGHT et al.
v.
CROWSON WELL SERVICE, INC., et al., and Sallie H. Sentell, et al.
No. 55383.
Supreme Court of Louisiana.
April 24, 1975.
Rehearing Denied May 30, 1975.
Dissenting Opinions June 5, 1975.
*804 David Klotz, Bodenheimer, Jones, Klotz & Simmons, Shreveport, H. Alston Johnson, III, The Law School, Louisiana State University, Baton Rouge, Curator ad Hoc, J. Philip Goode, Goode, Goode & Overdyke, Shreveport, for defendants-applicants.
Neil Dixon, Shreveport, for plaintiffs-respondents.
James Fleet Howell, Feist, Schober & Howell, Shreveport, for defendants-respondents.
CALOGERO, Justice.
This law suit involves the construction of two documents which were executed by Mrs. Etta May Baxley conveying undivided mineral and royalty interests in certain property to Dr. C. E. Sentell.
Plaintiffs, who brought this declaratory action in the First Judicial District Court (and defendants Crowson Well Service, Inc. and B. C. McKeever) contend that in each of the conveyances a predecessor in title, Mrs. Baxley (deceased) conveyed unto Dr. Sentell, also now deceased, by mineral deeds dated June 10, 1963 and November 15, 1963 respectively, an undivided 1/16th mineral interest in certain properties in Sections 22, 23, 24, 25 and 26 Township 19 North, Range 14 West, Caddo Parish, Louisiana (located in the Sentell field). The remaining defendants (the principal defendant being Dr. C. E. Sentell, and following his death during the pendency of this litigation, his surviving spouse and heirs, hereinafter referred to as Sentells), contend that the conveyance in each instrument was of designated numbers of mineral acres respectively, which amount to an undivided 1/16th mineral interest in each conveyance,
The first document declares that Mrs. Baxley conveys to Dr. Sentell 1/16th of 8/8ths of the oil, gas and other minerals in certain described lands approximating 366 acres and situated in the Parish of Caddo, Louisiana. The document then states that "it is the intention of vendor to convey and vendee to purchase 61 mineral acres in and under the above described lands." There follows a paragraph indicating that the sale was made subject to an oil and gas lease and "covers and includes 61 *805 mineral acres (1/16th of 8/8ths)" of all the oil royalties and gas rentals or royalties due and to become due under the terms of the lease.[1]

*806 The second document contains similar language except that the description of the real estate differs and the involved tract consists of approximately 940 acres.[2]
The fraction "1/16th of 8/8ths" of the oil, gas and other minerals is found in each instrument where the property conveyed (the mineral servitude) is normally described. It is, however, inconsistent with the recitation of the amount of mineral acres later described in each deed, because the mineral acres recited in each instance amounts to approximately an undivided 1/6th mineral interest rather than an undivided 1/16th mineral interest.[3]
At the time of each conveyance Mrs. Baxley owned an undivided 1/3 interest in the respective tracts.[4]
Each tract was also subject to prior mineral leases providing for the standard 1/8th royalty and an additional 1/16th overriding royalty to the three lessors. Mrs. Baxley therefore owned a royalty interest of 3/16ths as to her undivided 1/3 interest in the property or approximately a 1/16th royalty interest in the entire acreage.
The trial court determined that the interest conveyed in each sale was 1/16th of the minerals under the tracts involved and judgment was rendered defining the mineral ownership of the various parties affected by these mineral sales in accord with this finding.
The trial judge found the conveyance by an undivided fractional interest (1/16th) irreconcilable with the reference to "mineral acres," and determined that the clear concise and definite fractional interest description should prevail over the other clause referring to mineral acres (which he determined was of uncertain meaning). He further determined that ambiguity in the instrument should be construed under Article 1958 of the Civil Code against the vendee whose agent had prepared the ambiguous instruments.
The Sentells appealed from that judgment to the Second Circuit Court of Appeal which affirmed the judgment of the trial court.
The Court of Appeal stated that considering the most favorable evidence for Dr. Sentell he had not sustained the burden of showing there was an intent on the part of the vendors as well as the vendee to buy and sell under the formula of mineral acres rather than the fractional proportion first expressed in the conveyance. They acknowledged that the term mineral acres has usage in the oil industry but does not have a simple definite meaning which is easily understood by a person who has little or no experience in the field of minerals. They found an irreconcilable conflict between the respective provisions in each conveyance and concluded that the trial judge was correct in applying Civil Code Article 1958[5] so as to construe the doubt and ambiguity against Dr. Sentell whose agent prepared the instruments, *807 rather than Article 2474,[6] which dictates the construction of ambiguous clauses against the seller.
We granted writs, 302 So.2d 305 (1975) on application of the Sentells.
The facts surrounding the execution of these two instruments is as follows:
Dr. Sentell hired Mr. John H. Gilbert to prepare and then procure on his behalf, the two controverted mineral deeds. Mr. Gilbert had for a number of years been engaged as a land man and/or lease broker in the oil business and more specifically as an independent broker. He prepared the instruments at the direction of his principal, Dr. Sentell. He was the one who had the specific terms and provisions placed in these two mineral deeds. He did so on two Bath Louisiana Sale of Mineral Rights forms brought by him to Houston, Texas. The vendor, Mrs. Etta May Baxley, an elderly lady at the time of the execution of these mineral deeds, and an aunt of Dr. Sentell's, was confined to an old folks' home. She had nothing to do with the preparation of the two mineral deeds. She died shortly after the execution of the two mineral deeds, and before the two tracts involved began producing oil.
Both Dr. Sentell and Mr. Gilbert testified at the trial in the district court in connection with an offer of proof after the trial judge ruled parol evidence inadmissible. The Court of Appeal expressed the view that parol should have been admitted and therefore reviewed the entire offer of proof, but did not find the evidence sufficient to change the conclusions reached by the trial judge.
The sale instruments are indeed ambiguous if the words "mineral acres" are to be given the meaning ascribed to them by defendants (See Footnote 1 supra, and the common law text cited by defendants, Williams and Meyers, Oil and Gas Law (1971), Manual of Oil and Gas Terms, Page 262),[7] namely, all of the minerals on and/or beneath one acre of land.
They are uncertain and ambiguous because of the irreconcilable conflict between the fractional interest conveyed (1/16) and the reference to mineral acres intended to be conveyed (which equates to an undivided 1/6).
Accordingly, it was proper for the Court of Appeal to consider the parol evidence introduced by the Sentells. That evidence, testimony by Dr. Sentell and his agent, Gilbert, was generally to the effect that they were intending to purchase 61 and 156.67 mineral acres, respectively, or ½ of Mrs. Baxley's minerals at a price of $20.00 per acre in each instance.[8] They did not contend that the "1/16th" entry at the paragraph on the form describing the mineral servitude conveyed was mistaken, and should have read 1/6th, but rather that this was their means of expressing their entitlement to Mrs. Baxley's royalty interest under the lease. We find it difficult to believe that Dr. Sentell and his experienced agent would use the mineral servitude portion of the form to describe the royalty interest intended to be conveyed, or allow such patently erroneous use of the form. In any event that portion of the form *808 unambiguously conveys a 1/16th servitude and not a royalty interest.
Their parol proof was additionally inconsistent, for Dr. Sentell testified, in response to a question as to "what royalty and what mineral interest" he had specified should be inserted in the mineral deed, that he "agreed to take the 1/16th of 8/8ths, and that's what they had to put in there."
While the foregoing answer by Dr. Sentell would support plaintiffs rather than the Sentell interests, we do not rest our result in this case on that perhaps unintended response. Rather we conclude that ambiguity in the instruments persists even after considering defendant's evidence, an ambiguity caused by clear but conflicting descriptions of the mineral servitude conveyed.
Against whose interest must this ambiguity be resolved, the seller, Mrs. Baxley, under C.C. Article 2474 or the purchaser, Dr. Sentell, who confected the instrument, under C.C. Articles 1957 and 1958?
The Court of Appeal asserted that Article 2474 has no application to this case, noting that the Article has only been applied when the vendor has prepared or been responsible for preparing a written sales agreement.
While we are not willing to say that Article 2474 has application only when the vendor has prepared the sales agreement, we are nonetheless in agreement with the Court of Appeal that Article 2474 should not be applied in this case in preference to Articles 1957 and 1958. The underlying facts and circumstances simply run counter to the legal premise at the heart of Article 2474, (that the vendor is in a better position than the buyer to impose his will, does not part with his thing unless he wishes"Who sells the pot says the word" is the ancient adage). Those facts show that Dr. Sentell and his agent-lease broker, Gilbert, were significantly more experienced in the preparation and execution of mineral deeds, that the instruments were fully prepared by them, (including the conflicting descriptions of the minerals conveyed) and that the ambiguity arose because they employed an exceptional stipulation (the "mineral acres" clause) at variance with the clearly unambiguous fractional interest description of the mineral servitude being conveyed.[9]
Under these circumstances where the purchaser has prepared a sale with conflicting provisions describing extent of the mineral interest conveyed we believe that the provisions of Articles 1957 and 1958 are and should be applicable and that the amibiguities in the instrument should be resolved against the party who confected same.
For the foregoing reasons we conclude that there is no error in the judgment of the Court of Appeal, the writ is recalled and the judgment of the Court of Appeal affirmed at relator's cost.
SANDERS, C.J., and SUMMERS, J., dissent and will assign written reasons.
DIXON, J., is recused.

On Application for Rehearing
PER CURIAM.
The application for rehearing points out that the effect of our opinion was to affirm the fee of the attorney appointed to represent the non-resident defendants as fixed by the trial court at $250.00. It *809 is urged that the fee should be increased, in view of the additional services required of this attorney by his representation of the non-residents on appeal.
We think this point well taken, and the judgment of the trial court will be amended to increase the fee of the curator to Seven Hundred Fifty and No/100 Dollars. As thus amended, the judgments of the district court and the court of appeal are reinstated and affirmed, our original opinion having decided all other contentions urged on rehearing.
In so doing, we reserve the right of the other parties to the litigation to apply for rehearing within the legal delay as to this increase by us of the fee fixed for the attorney for the non-residents.
Rehearing denied, with minor amendment of trial court decree.
SANDERS, C.J., and SUMMERS, J., are of the opinion that a rehearing should be granted but concur in the fixing of the curator's fee.
SANDERS, Chief Justice (dissenting).
I dissent for the reasons set forth in the dissenting opinion of Mr. Justice Summers.
SUMMERS, Justice (dissenting).
As the mineral deeds under consideration, referred to in Footnote 1 of the majority opinion, declare, plaintiffs' predecessor Etta May Baxley owned an undivided 1/3 interest in two tracts of land, one containing 366 acres and the other containing 940 acres. Her 1/3 interest in the total acreage of these two tracts (1306 acres), therefore, was the equivalent of 435.33 mineral acres; if she sold one-half of this interest, she would sell 217.67 mineral acres. This was accomplished when she sold 61 mineral acres on June 12, 1963 and 156.67 mineral acres on November 15, 1963.
The price paid for the 61 mineral acres was $1,220, and the price paid for the 156.67 mineral acres was $3,133.33, a total of $4,355.33. When this fact is considered in connection with the proof that the purchase was negotiated and made for $20 per mineral acrethat is, $20 × 217.67 acres, or a total of $4,353.33, the conclusion is inescapable that the transactions were negotiated on the basis of mineral acres and not the "1/16th of 8/8ths" fractional interest referred to in the deeds.
When these transactions were negotiated the property was subject to an oil, gas and mineral lease which entitled Etta May Baxley to a 1/8 royalty in the event of production. It is understandable under these circumstances that the purchaser of the ½ mineral interest would seek an understanding that his purchase of one-half of the seller's mineral interest would entitle him to ½ of the 1/8 production to which the seller-lessor was entitled. Thus "1/16 of the 8/8ths", (which is ½ of 1/8 of 8/8) was inserted in the deed to make it clear that, with the lessee being entitled to 7/8 of the production, the purchaser would get ½ of the seller-lessor's 1/8, which is the same as saying 1/16 of 8/8.
A fair and reasonable view of this problem, considering the deeds as a whole, and the existing state of facts upon which they were based, requires that the "mineral acre" basis be accepted as the true intention of the parties. Any other result leads to absurd consequences. For instance, if plaintiffs' contention is accepted that the deeds conveyed a 1/16 mineral interest in the described acreage, it would mean that the purchaser acquired 1/16 of 1,306 acres, or approximately 81.62 mineral acres. Since the consideration paid was $4,353.33, this would mean that the 81.62 mineral acres were acquired for $53.33 per acre. Aside from the fact that this is an odd figure to select to acquire minerals on a mineral acre basis, the fact is established by the record that the price was $20 per acre. Furthermore, 81.62 mineral acres is *810 absurdly out of line with the 217.67 mineral acres (61 plus 156.67) referred to in the deeds.
Alternatively, under plaintiffs' contention that only a fractional 1/16 of 8/8 of the minerals were sold, the computation should more properly involve 435.33 acres, for this was Etta May Baxley's acreage equivalent of her one-third interest in 1,306 acres. Thus, if she sold a fractional 1/16 of her 435.33 mineral acres, which is all she could sell, she would be selling 27 mineral acres. When the 27 mineral acres are divided into the total purchase price of $4,353.33 the result is a price of $161.23 per acre. Again this is an odd amount which is not only unlikely but entirely unrelated to the fact that the price paid was $20 per acre. This 27 mineral acres is, plainly, unrelated to the recited 61 and 156.67 mineral acres in the deed.
In addition to the absurd consequence the majority opinion reaches from a factual standpoint, it is my view that the law of this State and the jurisprudence generally involving the interpretation of sales of mineral rights support the contention of the defendants.
As a basic proposition I agree that the deeds are ambiguous and that extrinsic evidence was properly admitted. In this context, since an ambiguity exists and the deeds are sale transactions, Etta May Baxley, the seller, was bound to explain herself clearly, respecting the extent of her obligations: any obscure or ambiguous clause, such as the 1/16 of 8/8 in juxtaposition to the recited mineral acres, is required to be construed against her. La.Civil Code art. 2474.[1]
Under arrangements of the Code, contracts such as sales and leases "are subject to a special and detailed regulation contained in the civil code", whereas, innominate contracts "are those which are subject only to the general principles of the law of contracts." Litvinoff, Obligations, ¶ 113, 6 La.Civ.Law Treatise (1969). Because these mineral deeds are contracts of sale they are regulated by particular rules which are established in the parts of the Code which treat of these contracts. La.Civil Code art. 1778. Article 2474 of the Civil Code embodies such a rule.
This does not mean that contracts of sale are not subject to general rules found in the code for interpretation for contracts. It does mean, however, that sales contracts must first be considered under principles announced in the code specifically applicable to sales contracts. And Article 2474 cannot be superseded by a rule of construction applicable to contracts generally requiring that the ambiguity be construed against the party who prepared the contract.
Planiol explains the reason for the special rule regarding sales:
"Ordinarily when the sense of a contract is doubtful, it is interpreted `against him who has stipulated and in favor of him who has contracted the obligation' (Art. 1162). (La.Civ.Code Art. 1957). If such rule is applied to sale, the doubtful clauses are interpreted sometimes in favor of the vendor and sometimes in favor of the buyer, since each of them assumes, in turn, the role of promisor and the role of stipulator. But in the case of sale there is an exceptional rule, according to which `every pact obscure or ambiguous is interpreted against the vendor' (Art. 1602). (La.Civ.Code Art. 2474). The vendor is therefore held, as that text says, "to explain clearly what he binds himself to." Planiol, Civil Law Treatise, Vol. 2, Part 1, No. 1357 (La.S.L.Inst. transl. (1959).
If these obvious requirements of the Code are applied here, the ambiquity of the *811 mineral deeds must be construed against the plaintiffs, rejecting the contention that only 1/16 of the minerals were sold. It would follow from this that defendants' position in this litigation would be accepted upholding their contention that 217.67 mineral acres were conveyed in the two deeds.
Articles of the Code dealing with obligations generally will also support defendants' position. According to Article 1951, "When a clause is susceptible of two interpretations, it must be understood in that in which it may have some effect, rather than in a sense which would render it nugatory." In my view, the interpretation I have placed on these deeds in the beginning of this opinion gives effect to all stipulations in the deed: the mineral acre clauses are respected and the 1/16 of 8/8 clause is construed to mean one-half of the royalties to which Mrs. Baxley was entitled under the existing lease. This latter result would follow from a purchase of one-half of the minerals whether stipulated or not. On the other hand, the interpretation advanced by plaintiffs would render nugatory the clearly expressed intention to sell 156.67 and 61 mineral acres. La.Civil Code arts. 1945, 1948, 1950, 1955. Knight v. Blackwell Oil & Gas Co. et al., 197 La. 237, 1 So.2d 89 (1941); Glassell v. Richardson Oil Co. et al., 150 La. 999, 91 So. 431 (1922); Smith v. Anisman, 85 So.2d 351 (La.App.1956).
Authoritative works on the law of oil and gas support the reasoning of this dissent. Manual of Oil and Gas Terms by William and Meyers p. 262 (1971); also 1 Williams and Meyers, Oil and Gas Law, ¶ 320.2; 1 Kuntz, The Law of Oil and Gas, ¶ 16.3 (1962).
There is not the slightest implication of fraud, duress, coercion or deceit in the pleadings or evidence in this case. Yet, there is an overtone or implication in the opinion that Dr. Sentell took advantage of Mrs. Baxley, which may be gained from the statement that Mrs. Baxley was "confined to an old folk's home". Furthermore, the opinion fails to mention that the two contracts of sale were negotiated and supervised by Mrs. Baxley's daughter who was a bank employee (from which a certain competence in business affairs may be inferred). Her familiarity with, and attention to, this transaction is demonstrated by her insistence that a cashier's check be furnished for the price in lieu of the draft tendered by Dr. Sentell. The implication that an advantage was taken of Mrs. Baxley is further dispelled by the fact that the daughter executed one of the sales in her capacity as agent for her mother. If any implication is to be drawn from these facts it is, instead, that Mrs. Baxley's daughter raised no objection to the ambiguity, for she realized that the contradictions in the deed could only result in a disadvantage to Dr. Sentell by weakening his expressed intention to acquire the stated mineral acres. It is significant, also, that though plaintiffs had the burden of establishing their contention by a preponderance of the evidence, no income tax returns of Mrs. Baxley were introduced into evidence to establish the treatment the funds received by the seller. This would be relevant because of the difference in taxable gain between the sale of a 1/16 part of her minerals and the sale of ½ her mineral interest.
In summary it is my opinion that the Court has ignored this common sense canon of construction: "When there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties, rather than to adhere to the literal sense of the terms." La.Civil Code art. 1950. What could more clearly manifest that intention than this clause typed into the printed form of the contract: "It is the intention of the Vendor to convey and Vendee to purchase sixty-one (61) mineral acres in and under the above-described lands."? If all else in the contract is vague, ambiguous and contradictory, this quoted clause is not. *812 It expresses the "intention" of the parties. Yet, this clearly expressed intention has been given no effect by the Court's decision.
I respectfully dissent.
NOTES
[1] The following is the first of the two documents, a sale dated 10 June 1963:
[2] We deem it unnecessary to duplicate the second document for purposes of this opinion.
[3] Defendants contend that mineral acres should be transformed into an undivided fractional interest in the mineral servitude by using the number of mineral acres provided, as the numerator (in the two deeds 61 and 156.67 respectively), and the total acreage of the tract as the denominator (366 and 940 respectively), to arrive at the fractional interest conveyed 61/366 and 156.67/940 respectively). Accordingly conveyance is of an undivided 1/6th mineral interest, defendants contend.
[4] Subject to a 1/12 mineral servitude granted by a predecessor in title to one James Newborne in 1949.
[5] Articles 1957 and 1958 provide:

Article 1957: In a doubtful case the agreement is interpreted against him who has contracted the obligation.
Article 1958: But if the doubt or obscurity arise for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted, whether he be obligor or obligee.
[6] Article 2474: The seller is bound to explain himself clearly respecting the extent of his obligations: any obscure or ambiguous clause is construed against him.
[7] As the Court of Appeal noted only two Louisiana cases have been cited that have used the term. Smith v. Anisman, 85 So.2d 351 (La.App.2nd Cir. 1956) and Melancon v. Cheramie, 138 So.2d 138 (La.App.1st Cir. 1962).
[8] As the Court of Appeal noted the strongest evidence in the Sentell's favor was a bank draft in payment of the consideration of the sale on Tract 1 on which was written "For 61 undivided mineral acres located . . . ." On this premise, Dr. Sentell, while paying $20.00 for each mineral acre, would have been paying nothing for Mrs. Baxley's conveyance for royalty interest under the leases.
[9] We consider worth noting in this regard a passage from Planiol wherein he notes that Article 1602, the French counterpart to C.C. Article 2474, "should be entirely discarded and the general rule of Article 1162 should be applied in all cases where the doubt bears not on a clause which is naturally part of the contract of sale but on an exceptional stipulation which the buyer has inserted for his own benefit." 2 Planiol Traite Elementaire de Dorit Civil 1357 (11 e ed. 1939, La.Stat. Law Inst.1959).
[1] La.Civil Code art. 2474 provides:

"The seller is bound to explain himself clearly respecting the extent of his obligations: any obscure or ambiguous clause is construed against him."