371 So.2d 1322 (1979)
In the Matter of the Interdiction of Mrs. Mary Josie Reno FABRE.
Nos. 63057, 63317.
Supreme Court of Louisiana.
May 21, 1979.
*1323 Margaret A. Coon, Baton Rouge, for applicant, Mrs. Mary Josie Reno Fabre in both cases.
Ralph Brewer, Michael W. McKay, Baton Route, for respondent, Anthony Reno in both cases.
Kevin Robshaw, Dudley D. Flanders, Flanders & Flanders, New Orleans, for amicus curiae The Mental Health Assoc. of La.
Ronald M. Soskin, South Bend, Ind., National Center for Law and the Handicapped, amicus curiae.
MARCUS, Justice.
Anthony Reno instituted this action to interdict his sister, Mary Josie Reno Fabre, alleging that, because of her infirmities, she is incapable of taking care of her person and administering her estate. He further sought to be appointed her curator. After expiration of the delay for answering, the court appointed an attorney to represent defendant. In her answer, defendant generally denied the allegations of plaintiff's petition. After trial on the merits, the district court rendered judgment in favor of plaintiff and against defendant decreeing a judgment of interdiction. The judgment *1324 also awarded defendant's court-appointed attorney $1,500 attorney fees and $420 expenses in connection with the litigation, a total of $1,920 to be taxed as costs against the estate of defendant. Subsequently, a hearing was held to determine who would be appointed curator for defendant. Judgment was rendered in favor of plaintiff appointing him curator. Defendant took separate appeals from the judgment of interdiction and the judgment appointing plaintiff curator. The court of appeal affirmed both judgments in separate opinions.[1] Defendant made separate applications to this court. We granted both applications to consider the correctness of the decisions rendered by the court of appeal.[2]
La.Civil Code art. 389 provides that "[n]o person above the age of majority, who is subject to an habitual state of imbecility, insanity or madness, shall be allowed to take care of his own person and administer his estate, . . . ." La.Civil Code art. 422 further provides that "[n]ot only lunatics and idiots are liable to be interdicted, but likewise all persons who, owing to any infirmity, are incapable of taking care of their persons and administering their estates, . . . ." Clearly, as prerequisite to the rendition of a judgment of interdiction, it must be shown that the person to be interdicted is mentally incapable of administering his or her estate and unable to take care of his or her person. Interdiction of Scurto, 188 La. 459, 177 So. 573 (1937). In addition, some courts have also required a showing that an actual necessity for the interdiction exists. In re Corbin, 187 La. 968, 175 So. 636 (1937); Landry v. Landry, 171 La. 280, 130 So. 866 (1930). Moreover, in determining whether a person is capable of taking care of her person, this court has held that "[a]n adult woman whose capacity is limited to the mere dressing and undressing of herself, to making up beds and sweeping floors, is not, in legal intendment, such a person as may be held capable of caring for her person. That the inmates of insane asylums perform acts of that character daily is of such common knowledge that the court may take judicial notice of the fact." In re Corbin, supra; Landry v. Landry, supra. Finally, mental infirmities are of infinite degree, and to what extent the mind must be affected to warrant a judgment of interdiction is largely dependent upon the facts of each case. Interdiction of Scurto, supra.
Hence, we must review the record in this case to determine whether defendant, because of her infirmities, is incapable of taking care of her person and administering her affairs and if so whether an actual necessity for interdiction exists. If our findings are in the affirmative, we must then decide whether plaintiff was properly appointed curator for defendant.
The facts are generally not in dispute. Defendant is a female who was thirty-one years of age at the time of trial. She was married twice, with the first marriage ending in divorce. Her second marriage was to Antoine (Anthony) Olix Fabre whom she married on July 20, 1971. During this marriage, she bore a son, Charles Anthony Fabre, who resided with defendant and her husband in a home owned by the latter. Mr. Fabre was employed with the sanitation department of the City-Parish (East Baton Rouge) for some twenty-five years before he died on August 11, 1977. He left defendant with an estate valued at about $47,000. The child of the marriage, who was two and a half years old at the time of trial, has continued to live with defendant in the family home. This action for interdiction was instituted on September 6, 1977.
Dr. Francisco A. Silva, court-appointed psychiatrist, testified that he examined defendant *1325 on one occasion at his office. He referred her to Mr. Dan Lichtenstein, a clinical psychologist, for psychological testing. Mr. Lichtenstein also testified at trial. Both experts agreed that defendant is moderately mentally retarded. They also concluded that, although defendant has some limited ability to make judgments, she generally is unable to abstract or reason constructively when left to her own devices. While they considered defendant capable of attending to the daily needs of herself and her child, they felt that she cannot, due to her mental deficiencies, handle money and thus requires close guidance in dealing with financial affairs. Moreover, defendant can neither read nor write. Both experts replied affirmatively when asked whether it was their opinion that defendant daily assumes more responsibility than an inmate in an asylum.
Dr. Linda M. Floyd, a clinical psychologist, also testified. She had interviewed defendant at defendant's home. Her testimony reveals essentially that she concurred with the findings of Dr. Silva and Mr. Lichtenstein, except that she felt on the basis of her interview with defendant and her observations of defendant in her home that defendant has more ability to abstract and reason constructively than those experts had indicated. She agreed that defendant is incapable of managing her money, but considered that she can function effectively in her domestic environment. Dr. Floyd testified that defendant is aware that there are unusual situations with which she cannot cope and for that reason keeps a list of telephone numbers in a book, including those of the fire and police departments, which she knows how to dial. Dr. Floyd stated that she considered that defendant has the ability to care for herself and to continue to live in her home. When asked specifically whether she felt that defendant manages more responsibility than an inmate in an asylum, Dr. Floyd responded: "I believe so . . . the things that Mary does for herself, cooking for herself and taking care of her child, are far more than people are required to do in institutions.. . ."
Other witnesses testified, including plaintiff and his wife, another brother of plaintiff and defendant, and the pediatrician who treats defendant's son. Additionally, the deposition of Mrs. Myrtle Chaney, a neighbor of defendant, was introduced in evidence. The testimony of these witnesses was to the effect that defendant is an immaculate housekeeper, who prepares meals, launders her clothes and those of her son, and shops for groceries. In addition, she goes unattended to the post office and to the drugstore to have prescriptions filled. She maintains her yard herself, mows the lawn and changes the oil and gas in the lawnmower. She enjoys television and relates to the plot. Furthermore, she goes around the neighborhood unattended and enjoys social interaction with various of her neighbors and a boyfriend. Defendant is a loving and caring mother, who keeps her child well-fed, clean and appropriately attired. She discerns when her child is in need of medical treatment and on those occasions calls the pediatrician and takes the child to his office, sometimes by taxi. The pediatrician testified that he had cared for defendant's child since his birth and during this period had seen defendant and her child on many occasions. He stated that defendant is aware when her child needs medical care and follows treatment prescribed by him. When asked to describe defendant's behavior as he observed it in his office, he responded: "Nothing extraordinary, just a caring mother. I never did other thanwell, I never did really separate her from any of the other mothers that I saw, you know, she was caring, concerned, brought the problem to the point, let me know exactly what she was worried about, was able to respond to my questions, just normal, normal as can be."
After review of the record, we conclude that defendant, because of her mental deficiencies, is incapable of handling her financial affairs. All the evidence supports this conclusion. However, the evidence is equally clear that defendant is not only capable of caring for herself but also for her child within the confines of her daily environment. *1326 Indeed, she has done so for many years without mishap. Her capacities in this regard are not limited to mere dressing and undressing herself and to making up beds and sweeping floors. Rather, defendant performs daily acts far beyond the capacities of inmates in an asylum. She maintains her house and yard unsupervised and without assistance. Moreover, she has demonstrated that she is fully capable of caring for her child, carrying out effectively such duties as clothing and preparing meals for the child and taking him to the doctor when necessary.
In sum, we find that, although the record supports the conclusion that defendant, because of her infirmities, is incapable of administering her estate, it does not support the finding that she is unable to care for her person, one of the prerequisites to the rendition of a judgment of interdiction. Having concluded that one of the prerequisites for interdiction is not present, a judgment of interdiction is not warranted. Hence, we need not consider whether an actual necessity for interdiction exists. Nor do we reach the issue of whether plaintiff was properly appointed curator for defendant.
The Mental Health Association of Louisiana and the National Center for Law and the Handicapped Advocate for the Developmentally Disabled have filed amici curiae briefs in this matter. They argue, inter alia, that the Louisiana law of interdiction is deficient in that it makes no provision for a "limited" interdiction which would not unduly affect the personal liberties of the interdict. The National Center cites to seventeen states which have provided by statute for limited guardianships of some form. Although such a remedy may well be a better solution in a situation where, as in the instant case, a person is incapable of handling his or her estate without assistance but is capable of caring for his or her person, it is beyond the scope of this court's authority to so provide. Under the present law of this state, provision is made only for a complete interdiction over the person and property of the interdict where the code prerequisites are met.[3] Any provision for a type of limited interdiction addresses itself to the legislature.
In her application to this court contesting the appeals court's affirmance of the judgment of interdiction, court-appointed attorney for defendant also assigns as error that the district court's award for attorney fees and expenses taxed against defendant's estate is inadequate and should be increased to include compensation for services performed on appeal. The appeals court declined to review this issue, noting that it should have been raised by defendant's attorney on her own separate appeal. We do not agree.
The trial court awarded court-appointed attorney for defendant the sum of $1,920 representing $1,500 for attorney fees and $420 for expenses in connection with the litigation. We find no abuse of the trial judge's discretion in this award. However, court-appointed attorney performed additional services in this matter on the appellate level for which she is entitled to be compensated. Accordingly, we find that defense counsel is entitled to an additional award of $500 for these services. See Light v. Crowson Well Services, Inc., 313 So.2d 803 (La.1975).
La.Code Civ.P. art. 4551 provides that the cost of an interdiction proceeding shall be paid from the estate of the defendant if a judgment of interdiction is rendered. However, if judgment is rendered in favor of the defendant, the court in its discretion may tax the costs, or any part thereof, against any party.
Finding that a judgment of interdiction was warranted, the trial court properly *1327 taxed all costs of the interdiction proceeding, including attorney fees and expenses of the court-appointed attorney, against the estate of defendant. However, we have found otherwise, I. e., judgment in favor of defendant. Therefore, the court in its discretion may tax the costs, or any part thereof, against any party. We are convinced from the record that plaintiff, defendant's brother, was in good faith in instituting the instant interdiction proceeding. Under the circumstances, we consider an equitable solution regarding the payment of costs of these proceedings is to tax the attorney fees and expenses of the court-appointed attorney against defendant and all other costs of the proceedings against plaintiff.

DECREE
For the reasons assigned, the judgments of the court of appeal affirming the judgments in favor of plaintiff and against defendant, decreeing a judgment of interdiction and the appointment of plaintiff as curator for defendant are reversed. Instead, judgment is rendered herein in favor of defendant, Mrs. Mary Josie Reno Fabre, and against plaintiff, Anthony Reno, dismissing his suit. Costs of attorney fees ($2,000) and expenses ($420) of court-appointed attorney, Ms. Margaret A. Coon, are taxed as against defendant; all other costs of these proceedings are taxed against plaintiff.
SUMMERS, C. J., agrees with the opinion, except that he concurs on the issue of costs and attorney's fees.
NOTES
[1] 361 So.2d 1315 (La.App. 1st Cir. 1978), affirmance of judgment of interdiction; (La.App. 1st Cir. 1978), affirmance of the judgment appointing plaintiff curator for defendant.
[2] 366 So.2d 558 (La.1979), grant in connection with application to review affirmance of judgment of interdiction; 366 So.2d 559 (La.1979), grant in connection with application to review affirmance of judgment appointing plaintiff curator for defendant.
[3] La.Code Civ.P. art. 4550 dealing with the appointment of a curator for the person interdicted after the judgment of interdiction provides in pertinent part: "Article 4069 governs the appointment of a separate curator of the property and person." See Comment (d) to article 4550 which states that article 4069 "to which reference is made in this article, provides for the appointment of a bank as separate tutor of the property. The principles involved apply also to curatorship of interdicts."