LABORDE, Judge,
dissenting.
I respectfully dissent from the majority opinion.
Plaintiff, Cecil Leo Goldsmith, instituted this proceeding to have his allegedly physically infirm wife, Betty Jean Goldsmith, defendant, declared a limited interdict and placed in a rest home for her physical welfare and rehabilitation. The trial court found that Betty Jean was incapable of caring for her person due to her paraplegic condition and held that she was a limited interdict, however, remaining sound in mind. Cecil was named limited curator and their son, Cecil Dale Goldsmith, as limited under-curator. Betty Jean appeals from *202 this judgment. Considering that such limited interdiction is necessary and in defendant’s best interest, I would affirm the judgment of the trial court.
FACTS
Betty Jean Goldsmith is a 62 year old paraplegic. She was left paralyzed from the upper rib cage and below as a result of a viral disease, transverse myelitis. This condition is presently stabilized, but has existed since 1974. She is confined to a wheelchair and requires substantial assistance to move about. She has no self-control over her bodily functions and requires a daily enema, as well as a constant catheter. The catheter requires changing every six weeks which she is unable to perform. She has received extensive training for rehabilitation and is mentally competent as reflected from her testimony in this proceeding.
Betty Jean has been married to Cecil for 42 years. Three children were born of the marriage. She has also cared for her 82 year old mother in the past.
For the past three to four years, Betty Jean has been attended to by private sitters due to her physical inability and the alleged refusal by Cecil to assist her. The parties’ home has been modified for Betty Jean to include a hydraulic lift and a ramp to assist her upon entry and exit to their home.
Cecil is 64 years old and is a retired factory worker with several physical problems of his own. He is unable to lift heavy objects and suffers from residual pain in his back. He claims that due to his physical inability to adequately provide for his wife, he desires to remove her to a rest home for adequate care and rehabilitation. He states in the record that he must “have a break” from the daily services which are incumbent upon him to provide for his wife’s proper physical welfare.
Betty Jean argues that she has cared for herself, and in the future, could provide for herself with only minor assistance. For this reason, she contends that limited interdiction is unwarranted.
The trial judge held that she was incapable of caring for her own person due to her physical infirmity and pronounced her to be a limited interdict as to her person only. Cecil was named limited curator and their son, Cecil Dale Goldsmith, was named limited under-curator with limited powers, duties and responsibilities over her person.
Betty Jean appeals from this judgment of limited interdiction and alternatively prays that the trial court judgment be amended to further restrict and limit the powers of the curator.
The issues presented on appeal are:
1) Whether Betty Jean Goldsmith is physically infirm to the extent that she should be declared a limited interdict; and,
2) Whether the limited interdiction judgment infringes upon the defendant’s rights in the least restrictive manner consistent with her incapacities.
ISSUE #1: LIMITED INTERDICTION
Betty Jean contends that plaintiff failed to meet his burden of proof to have her interdicted. For this reason, she avers that the judgment of limited interdiction should be reversed and set aside.
Interdiction is a harsh remedy and should be pronounced only where proof of the infirmity and the necessity for interdiction is clear and conclusive. LSA-C.C. art. 422; In Re Adams, 209 So.2d 363 (4th Cir.1968). The civil code has historically required a plaintiff to show the alleged interdict to be incapable of earing for their person and administering their estate as a prerequisite to interdiction. Additionally, the petitioner must show that such interdiction is necessitous and in the alleged interdict’s best interest. LSA-C.C. art. 422; Matter of Fabre, 371 So.2d 1322 (La.1979). This dual prong requirement for full or total interdiction, however, applies to instances only where a person is physically and mentally incompetent to maintain their persons and estates. In response to situations where there exists either a physical or mental disabling infirmity, the Louisiana Legislature has recently enacted codal au *203 thority to provide for such instances where, out of necessity, a person may be declared a limited interdict to remain competent to care for either his person or estate. LSA-C.C. art. 389.1 provides:
“Art. 389.1. Limited curator; judgment of limited interdiction; rights of limited interdict
When a person is declared incapable by reason of mental retardation, mental disability, or other infirmity under the provisions of Articles 389 or 422 of the Louisiana Civil Code, of caring for his own person or of administering his estate, a court of competent jurisdiction may appoint a limited curator to such person or his estate. Pending appointment of a limited curator, the court shall inquire into the specific abilities and disabilities of the incapacitated person and such limited curator shall have only those powers necessary to provide for the demonstrated needs of the incapacitated person. The powers, duties, responsibilities, and any liabilities of the limited curator shall be specifically set forth in a judgment of limited interdiction.
The rights of the limited interdict shall be infringed in the least restrictive manner consistent with his incapacities. A judgment of limited interdiction shall not operate to deprive the incapacitated person of any civil right, the right to contract, or any right pertaining to any license, permit, privilege, or benefit unless specifically set forth in the judgment.”
Armed with these standards and distinctions, I proceed to review the trial court’s judgment of limited interdiction of Betty Jean in light of the facts.
Physical infirmities which give rise to a necessity for limited interdiction of one’s person must be to the extent that the alleged interdict is incapable of personally or otherwise caring and providing for their physical welfare. In Re Adams, supra. There must be clear and convincing evidence to show that the limited interdict lacks the necessary capacity to care for his person and that because of these incapabilities presents himself with a threat of harm by continued efforts of caring for himself.
I find, as did the trial judge, that Betty Jean poses a threat of harm to herself by attempting to care for herself at home. This is evident from the following facts which conclusively show a necessity for daily and special attention from others for her physical welfare. I find that the majority has failed to properly consider these facts in the course of reviewing the record.
Betty Jean is confined to a wheelchair and is paralyzed from her rib cage downward. She cannot walk. Since the occurrence of her confining condition, she has become overweight and requires aid from others to be moved in and out of the wheelchair. She cannot give herself a bath or get in and out of her bed without substantial aid. When asked during trial whether she could care for herself, the following discourse occurred:
“Q Do you have a belief as to whether you could take care of yourself totally or not?
BY MR SAVOIE: Do you believe...
BY THE WITNESS: I heard that, but

BY MR. SAVOIE: Do you believe that you could take care of yourself if you had...
BY THE COURT:
Q I need your frank opinion. I need your frank opinion.
A Well, since my doctor had advised my bowel control to be controlled by an enema every morning, that, I cannot do for myself.
Q Well, aside from that, aside from those physical functions, could you totally care for yourself, if no one lived with you?
A I think truthfully I would have to say probably not, totally alone.”
As stated earlier, she no longer has control over her bodily functions. She requires constant attendance by a capable person to help her move about and administer the daily enemas. Her catheterization *204 must be changed and cleaned every six weeks for which she is unable to perform and requires special assistance. She argues that such assistance is of a nature that she could obtain in her own home and eventually provide for herself. I find these services to be of utmost importance to her welfare to the extent that it poses great risks of harm to her if not properly attended.
Conversely, Cecil argues that he is no longer able to personally care for Betty Jean because of his own limited physical ability. He too suffers from partial physical disabilities. Further, it appears from the record that the cost of constant in-home attendant care for Betty Jean would impose an undue economic hardship on the community. During Betty Jean’s testimony, the following discourse bears this out:
“Q Tell me something about the family financial situation. How do you and your husband afford attendants for you, medical treatment, things of that nature? Where does the money come from? Are you wealthy or not?
A Oh, no, sir.
* * * * * *
A Truly, I understand. My husband took his retirement fund from his employer, Conoco, Continental Oil Company, when he took early retirement due to his own physical problems, and Social Security. I do not draw personal Social Security, because I did not work outside the home since Social Security had been in being; consequently, I am not eligible for any kind of disability compensation for myself.
Q You have no income of your own?
A No, only the small amount that I’m able to draw from his Social Security at the present time...
Q I see.
A .. .which started several months ago. Now, I can’t give you the exact date on that. I would have to look that up in my wallet.
Q Other than your husband’s retirement fund and his Social Security, do you folks have any income?
A Some invested monies which are in the hands of Merrill Lynch Investment Counsellors. I think that was part of his lump-sum retirement fund that he invested.
Q Is that an amount sufficient to care for you and your husband the rest of your lives?
A I cannot answer that question, considering the fluctuation of the economy and prices, and et cetera. That is a question that I don’t believe anyone could answer right at this moment. The fluctuating value of the dollar...
Q Well, what I want to know...
A .. .rather prohibits a definite answer, I would say.
Q What I would like to know...
A Yes, sir.
Q Suppose you and your husband obtained a legal separation, or a divorce, and divided your properties between you, one-half to each of you after paying any debts that there may be, and disposing of all of the properties and converting it into cash and giving it to you, giving you your half of it, half of the value of the family home, assuming you have one, vehicles, anything else. If you took one-half of all of the family assets, could you then purchase suitable living quarters and hire for yourself whatever persons you needed to assist you, and live the rest of your life without any further assistance from anyone, financial or physical?
A Well, I probably would have to have some physical assistance, as I said, in some areas of body care. And as to the other question, I really do not believe, personally, that he is financially able to support two establishments, even as in a nursing-home care. But I am not an economist, not a professional economist...”
Betty Jean’s condition has not improved while at home and, if anything, has worsened since she has gained weight, making it more difficult for her to be moved. Cecil testified that her body size has increased to *205 the extent that he can no longer physically handle her when necessary. It is undisputed that Betty Jean must be moved and handled by others on several occasions per day for proper and adequate care of her person. There appears to be constant turmoil and dispute between Cecil and Betty Jean arising out of Cecil’s inability to properly care for Betty Jean. Additionally, I detect from Betty Jean’s testimony that Cecil’s income will not provide for constant in-home attendant care necessary for the proper care and welfare of Betty Jean’s person. For these reasons, I find it necessary, as did the trial court, to have Betty Jean declared a limited interdict as to her person in order that she might be placed in a rest home to receive proper and dignified care and rehabilitation of her person.
For these reasons, I find no manifest error or abuse of discretion in the trial court’s judgment of limited interdiction of Betty Jean’s person. The majority fails to point out any manifest error as a basis for reversal in this instance. Rather, I find their decision to be one based upon a difference of opinion. Our review on appeal should not be to substitute our decision for that of the trial court in the absence of abuse of discretion or manifest error.
ISSUE # 2: LEAST RESTRICTIVE INFRINGEMENT
Article 389.1 requires that the rights of the limited interdict be infringed' in the least restrictive manner consistent with her incapacities. Betty Jean contends that the powers granted unto Cecil as curator are excessive. The powers and duties granted unto Cecil over his wife’s person are as follows:
“(1) The power to commit the limited interdict to a hospital for medical treatment, or other facility for rehabilitative purposes, or any other facility for the care of her physical needs;
(2) The curator has the duty and responsibility to assist in the total care of the physical well-being of the interdict, to see that she gets medicine, proper diet, and administers to her physical needs and bodily functions, and to provide such other assistance as may be required to fulfill her physical needs, including attempting to get rehabilitative therapy and exercise;
(3) The limited curator shall have no liability on the money, property, or business affairs of the limited interdict, except to the extent provided by the community property laws of the State of Louisiana, as long as a community of property exists between the curator and the limited interdict.”
The judgment of limited interdiction grants unto Cecil the power necessary to provide for the demonstrated physical needs of Betty Jean. The judgment also limits the limited curator’s authority over Betty Jean’s affairs and her mental abilities.
I find that such authority and responsibility placed upon Cecil is both necessary and the least restrictive in light of the circumstances. There is evidence that Betty Jean has refused treatment and rehabilitative measures offered to her at a rest home. Due to Cecil’s inability to provide for her, I find it is in the best interest of Betty Jean that she submit to professional care and rehabilitation in hopes that she might achieve the necessary abilities to care for herself in the future.
I note that the limited under-curator, Betty Jean’s son, shall always have the prerogative to object or interpose as to any type of authority imposed by the limited curator. Betty Jean may also petition the court in the future should she feel that she has recovered to the extent that limited interdiction is no longer necessary. There are, therefore, sufficient and adequate protections provided by law for the limited interdict in the event that the limited curator might abuse his authority over the limited interdict.
In the course of oral argument, the attorneys for the litigants, when asked by me *206 how to construct a more restrictive order, could not fashion such a judgment or offer suggestion on how to do so. After reviewing the judgment, I find it to be least restrictive and in keeping with the legislative intent of LSA-C.C. art. 389.1.
For these reasons, I respectfully dissent.