YELVERTON, Judge.
Betty Jean Goldsmith appeals a judgment declaring her a limited interdict, under Louisiana Civil Code article 389.1, by reason of a physical infirmity, and placing the care of her person in the hands of a limited curator, her husband, Cecil Leo Goldsmith, the appellee. The judgment empowered the limited curator to commit appellant to a hospital or other facility for the care of her physical needs. Mrs. Goldsmith’s primary assignment of error is that there was no showing of an actual necessity for the interdiction and that, therefore, an essential prerequisite to the rendition of a judgment was absent and a limited interdiction was not warranted. We agree with this contention and reverse the judgment.
There is no substantial dispute about the facts. Betty Jean, 62, is paralyzed from the waist down. Her condition, caused by the disease transverse myelitis, is stabilized but permanent. She and the petitioner, 64, a retired plant worker, live alone in the family home; all three of their children are grown and live outside the state.
Since 1974, when she was first afflicted by the disease, Betty Jean has needed help for the care of her person. Unable to walk, she uses a wheelchair to get about. She cannot move herself to and from the wheelchair without assistance. She has no control over her bodily functions; she requires a daily enema, which must be done by others, and a constant catheter, the periodic changing and regular cleansing of which must likewise be done by others. Not owning a specially equipped vehicle, she does not drive. There are many things she can do, because the wheelchair is mobile and she has the complete use of her hands. For example, she can get water for herself and prepare simple meals, though not hot foods. Nevertheless, she admitted that she cannot take care of herself and that she needs the assistance of others.
*200 This assistance has been provided for the most part by a sitting service, which has for several years furnished sitters from 8:00 A.M. to 12 midnight daily. The sitters do all the things for her that she cannot do for herself. Additionally, Home Health Services takes care of changing the catheter. A hydraulic lifting device is used to move her back and forth from the bed to the wheelchair. It appears from the testimony that Cecil, the husband, usually cooks the noon meal, but otherwise he leaves Betty Jean’s care up to the sitters while they are present. He gets water and gives his wife her medication at 6:00 o’clock every morning. This routine has been going on for at least the last four years.
Cecil and Betty Jean were the only two witnesses at the interdiction hearing. They stipulated that if their physician, Dr. Charles L. Fellows, had been called, he would have testified that Betty Jean is mentally competent but paralyzed from the waist down, and that Cecil is “unable to lift or give adequate care to his wife due to his back condition and age.”
In his petition seeking the interdiction, Cecil asked for his appointment as curator and for authority to place his wife in a nursing home. There was no medical testimony that Betty Jean needed to be in a nursing home. Cecil testified that she needed to be in one because he was becoming nervous, he needed a “break” from the responsibility of caring for her, and he would like her out of the house for awhile so he could do some renovating. If finances entered into the reasons for his filing the petition, it was not apparent in the pleadings or testimony, as relative costs of home care and institutional care were not discussed. Betty Jean denied there was any basis for an interdiction. At the trial she expressed the fear that if she should ever be put into a nursing home, she would never go home again.
The trial court found that Betty Jean was incapable of caring for her own person due to a physical infirmity. Based on this finding, and acting under the authority of new Civil Code art. 389.1, the trial court ordered that she be placed under a limited curatorship of her person, appointing her husband, Cecil, the limited curator. In addition to specifically empowering the limited curator to “commit” the limited interdict to a hospital or other facility for medical treatment, rehabilitation or care, the trial court imposed upon Cecil the duty and responsibility to provide for her physical needs, and exempted his personal estate from any liability. The decision to interdict, as well as the enumeration of the powers of the curator, were based on the single finding of fact that Betty Jean was unable to care for her own person because of a physical infirmity.
In our opinion, something more must be shown to justify a limited interdiction under article 389.1. An additional prerequisite is that the petitioner must establish an actual necessity for the interdiction. We reach this conclusion based upon a comparison between the proof requirements under Civil Code arts. 389 and 422 and the hew limited interdiction law, article 389.1.
Before 1981, there was no such thing as a limited interdiction in this state. Interdiction, whether for mental disability or other infirmity under Civil Code arts. 389 and 422, was in every case total, as opposed to limited, and, as prerequisites to the rendition of a judgment, it had to be shown that the person to be interdicted was both mentally incapable of administering his estate and unable to take care of his person. Matter of Fabre, 371 So.2d 1322 (La.1979). Some courts required the additional showing that an actual necessity for an interdiction existed. Fabre, supra; see also dissenting opinion of Chief Justice Dixon in State v. Williams, 392 So.2d 641 (La.1980).
Act 167 of 1981 introduced a limited interdiction into the law as Civil Code art. 389.1, which reads:
Art. 389.1. Limited curator; judgment of limited interdiction; rights of limited interdict
When a person is declared incapable by reason of mental retardation, mental dis *201 ability, or other infirmity under the provisions of Articles 389 or 422 of the Louisiana Civil Code, of caring for his own person or of administering his estate, a court of competent jurisdiction may appoint a limited curator to such person or his estate. Pending appointment of a limited curator, the court shall inquire into the specific abilities and disabilities of the incapacitated person and such limited curator shall have only those powers necessary to provide for the demonstrated needs of the incapacitated person. The powers, duties, responsibilities, and any liabilities of the limited curator shall be specifically set forth in a judgment of limited interdiction.
The rights of the limited interdict shall be infringed in the least restrictive manner consistent with his incapacities. A judgment of limited interdiction shall not operate to deprive the incapacitated person of any civil right, the right to contract, or any right pertaining to any license, permit, privilege, or benefit unless specifically set forth in the judgment.
We have found no case interpreting this new article. As we perceive its intent, a judgment of limited interdiction can now be granted on proof of incapacity either to care for one’s person or administer his estate, which is a change from the total interdiction requirements of articles 389 and 422, the prerequisites of which are proof of both incapacities. However, the new article clearly retains — and now encodes — the former jurisprudential requirement that there be a showing of the necessity for the interdiction. By requiring that the rights of the limited interdict shall be infringed in the least restrictive manner consistent with his incapacities, and that the limited curator shall have only those powers necessary to provide for the “demonstrated needs” of the incapacitated person, the new article has unquestionably installed into this type of interdiction the requirement that there be proof that an actual necessity for the interdiction exists.
No such proof was presented in this case. We agree with the trial court that Betty Jean cannot care for her own person by reason of her physical infirmity. However, her mental capacity is untouched by the disease that produced her physical infirmity. Not only is she able to administer her estate, but she also can do many things for her person; she is by no means helpless. She can communicate, she can move about in her wheelchair, and she has the use of her hands. There was no evidence that she would receive better care somewhere else; none that her condition would benefit from being institutionalized; no evidence she would deteriorate if allowed to stay home; in short, no showing was made that she has needs which are not being presently satisfied. She has certain special needs because of her physical incapacity, but there is a total absence of proof demonstrating that a limited interdiction is necessary to provide for those needs. For this reason, there exists no necessity for an interdiction in her case.
For the foregoing reasons, the judgment of the trial court ordering the interdiction of defendant, Betty Jean Goldsmith, is reversed, and judgment is rendered dismissing the petition. All costs in the lower court and on appeal are assessed to appel-lee.
REVERSED AND RENDERED.
LABORDE, J., dissents and assigns written reasons.