588 So.2d 799 (1991)
In the Matter of HEARD.
No. 22,843-CA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1991.
*800 Peters, Ward, Bright & Hennessy by Hugh T. Ward, Shreveport, for Fanny B. Heard.
Advocacy Center for the Elderly & Disabled by Margherita McWilliams and Ann Maclaine, Shreveport, for Loraine Heard.
Before NORRIS, HIGHTOWER and VICTORY, JJ.
NORRIS, Judge.
Loraine Heard, a limited interdict, appeals only those portions of a judgment which require the court and limited curator to be involved in specific decisions regarding her future placement, and which award attorney fees to her former curatrix; she does not appeal the court's authority to render a judgment of limited interdiction. Finding the judgment of limited interdiction to be, in part, unnecessarily restrictive, we amend and, as amended, affirm.

FACTS
Loraine Heard was interdicted in 1975 on the petition of her mother, Fanny Heard, *801 who was appointed curatrix. In March 1989, Miss Heard sued Mrs. Heard to revoke the interdiction or, in the alternative, to modify it to a limited interdiction. Mrs. Heard answered, requesting that the court maintain the interdiction because Miss Heard was unable to care for her person and affairs and was dangerous to herself and to others. Mrs. Heard further sought to be relieved of her duties as curatrix.
The testimony adduced at trial reveals that Loraine Heard, now 40 years old, has struggled with mental difficulties since her early teens. During her youth, Miss Heard's illness sometimes manifested itself in violent outbursts, several of which were directed at her mother. One such episode prompted a coroner's commitment to the Central Louisiana State Hospital at Pineville in 1971, followed by a judicial commitment and interdiction in 1975. The commitment was subsequently set aside, and Miss Heard has been a "voluntary" patient at Central Louisiana State Hospital since 1981.
Originally diagnosed with "chronic brain syndrome and chronic schizophrenia with depressive reaction," Miss Heard is now considered to suffer from "schizo affective disorder," a more positive diagnosis. Dr. Gary Glass, an expert in psychiatry, testified that in his opinion Miss Heard could function in an environment much less restrictive than a psychiatric hospital. He stated unequivocally that he did not consider Miss Heard to be dangerous either to herself or to others, and that she both accepted her need for continued supervision and understood that she might at some time again require hospital treatment for a short period. The next logical step should be placing her in an environment in which she can more readily improve her socialization skills and develop a degree of independence. Her primary needs at this time, he testified, were for someone to observe her behavior, administer medicine and make sure she attended regular treatment appointments.
Miss Heard testified that she was anxious to leave the hospital, but understood her need for continued support and supervision. She also admitted that she goes "hog wild" when given money. Dr. Glass stated that Miss Heard would need assistance with her finances; he nevertheless felt she could be taught to manage a small weekly allowance as she had learned to save small change and tokens that the hospital dispensed for use at its canteen.
Mrs. Heard testified that her daughter had exhibited no violent behavior toward her since 1980, but she nevertheless felt unable to care for her daughter at home. Mrs. Heard asked to be relieved of her duties as curatrix and submitted an accounting to the court detailing her daughter's expenses and income from social security and veteran's benefits.
In oral reasons rendered immediately following the trial, the court revoked the full interdiction, substituting a limited interdiction to administer Miss Heard's "monetary considerations," and asked her counsel to suggest means to facilitate her transition from the hospital to the "least restrictive environment" in which she could function. Due to disagreements between the attorneys about the wording of the judgment to be submitted to the court, more than a year elapsed before the written Judgment of Limited Interdiction was signed by the court on October 25, 1990. During this interval, Mrs. Heard submitted two supplemental accountings which reflect her legal expenses incurred defending this action.
The written judgment relieved Fanny Heard and the former undercuratrix of their duties and appointed a curator and undercurator to "manage the monetary and financial concerns of the Petitioner." It further stated that Miss Heard no longer needs to be hospitalized, but is not yet fully capable of living independently.
In one of two assignments of error urged on appeal, Miss Heard asks this court to reverse the portion of the judgment placing restrictions on her choice of living arrangements; she argues that she proved at trial that she was capable of making sound decisions on this matter herself and that a limited interdiction should grant the curator only the powers necessary to provide for demonstrated needs of the interdict.
*802 Mrs. Heard contends that the written judgment does no more than necessary to ensure that Miss Heard will remain in an appropriate supervised setting.
Miss Heard also argues that the trial court erred in allowing her estate to be depleted to reimburse her curatrix for attorney fees and costs incurred in defending this action. We note that the court, in an opinion filed June 9, 1990, expressly reserved to Miss Heard the right to contest the reasonableness of the attorney fees. Mrs. Heard claims that she is entitled to be reimbursed for the reasonable legal expenses she incurred defending an action which she, in good faith, believed to be against her daughter's best interests. She asks that the judgment be affirmed in all respects.

DISCUSSION
Assignment # 1: Attorney Fees
Miss Heard assigns as error the court's ruling that her estate may be assessed with the attorney fees incurred by her mother in defending this action. We find this assignment to be without merit.
Costs of an interdiction proceeding, including attorney fees, are assessed against the estate of the interdict if a judgment of interdiction is rendered; however, if the proposed interdict prevails, the court has discretion to tax any part of the litigation expenses against any party. La.C.C.P. art. 4551; Matter of Fabre, 371 So.2d 1322 (La.1979); In re Lomm, 195 So.2d 416 (La. App. 4th Cir.), writ refused 250 La. 541, 197 So.2d 81 (1967). Where, as here, the judgment resulted in a limited interdiction, the court clearly had discretion to assess costs in the manner it considered most equitable. A curator or undercurator acting in good faith is not personally liable for the expenses of litigating matters of the curatorship, including attorney fees. See Lacey v. Lanaux, Tutrix, 19 La.Ann. 153 (La.1869); In re Lomm, supra at 418. The evidence adduced at trial showed that Miss Heard is unable to manage either her finances or her daily life without some supervision, facts which support Mrs. Heard's contention that she had good reasons to resist her daughter's action to revoke the interdiction. Indeed, counsel for Miss Heard conceded at oral argument that Mrs. Heard acted in good faith. Her obligation as curatrix to act in what she believed to be Miss Heard's best interests continued until she was relieved of that duty by the October 1990 judgment. The court's assessment of the curatrix's attorney fees against Miss Heard's estate is clearly not an abuse of discretion on this record.
Assignment #2: Extent of Limited Interdiction
In her second assignment of error, Miss Heard contests the following paragraph of the trial court's judgment:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Central Louisiana State Hospital shall release Loraine Heard only to an approved and accredited supervised community setting, such as a boarding home, a supported therapeutic group home, or a halfway house approved by the hospital, with the limited curator having the continuing duty and responsibility to insure that Loraine Heard is continued in such a restricted environment. This court retains jurisdiction over this matter to pass upon any relocation of Petitioner and/or to deal with other matters which may arise in connection with the affairs and person of the Petitioner.
Except for the court's jurisdiction, which would continue regardless of the judgment, Miss Heard asks us to reverse this part of the judgment as unnecessarily restrictive and contrary to La.C.C. art. 389.1, which provides for limited interdiction; the article reads as follows:
When a person is declared incapable by reason of mental retardation, mental disability, or other infirmity under the provisions of Articles 389 or 422[1] of the *803 Louisiana Civil Code, of caring for his own person or of administering his estate, a court of competent jurisdiction may appoint a limited curator to such person or his estate. Pending appointment of a limited curator, the court shall inquire into the specific abilities and disabilities of the incapacitated person and such limited curator shall have only those powers necessary to provide for the demonstrated needs of the incapacitated person. The powers, duties, responsibilities, and any liabilities of the limited curator shall be specifically set forth in a judgment of limited interdiction.
The rights of the limited interdict shall be infringed in the least restrictive manner consistent with his incapacities. A judgment of limited interdiction shall not operate to deprive the incapacitated person of any civil right, the right to contract, or any right pertaining to any license, permit, privilege, or benefit unless specifically set forth in the judgment.
Neither side contests the trial court's authority under this statute to render a judgment empowering a limited curator to exercise a degree of control over both the limited interdict's estate and certain of his defined personal rights. Indeed, the article clearly authorizes the court to fashion such a judgment, tailoring the limited curatorship to the demonstrated needs of the limited interdict after careful inquiry into his "specific abilities and disabilities[.]"[2] Rather, Miss Heard complains first that the evidence does not support the necessity of the limited curator having any authority over her person and, second, that the judgment unnecessarily restricts the possibilities of living arrangements that might be made either by her or by a limited curator.
A limited interdiction may be imposed upon a showing that the individual is incapable of caring for his person or his estate, and that an actual need for interdiction exists. La.C.C. art. 389.1; Interdiction of Goldsmith, 456 So.2d 198 (La.App. 4th Cir.1984). Although Miss Heard contends that she is fully capable of making her own decisions concerning her treatment and is willing to cooperate with her doctors' advice, she concedes that she is unable to live independently at this time. Her own expert testified that she would need someone to supervise her treatment, ensure she takes her medicine regularly and observe her behavior. The record shows that she is incapable of adequately caring for her person without some assistance. The judgment of limited interdiction with the limited curator having specified powers over Miss Heard's person is thus warranted and necessary.
Miss Heard further argues that the limited grant of authority to the curator over her person is unnecessary because the Central Louisiana State Hospital would release her only to an appropriate facility. However, we do not find the testimony of Miss Heard and her mother regarding their understanding of hospital policy to be "clear and convincing" evidence of that policy, as Miss Heard suggests in brief; no other evidence on this subject was introduced. Moreover, any procedural safeguards *804 inherent in the hospital discharge policy would apply only to Miss Heard's initial placement, not to any future moves she might make. We are also unpersuaded that the statutory commitment provisions of the Louisiana Mental Health Law (La. R.S. 28:1 et seq.) eliminate the necessity for the contested aspects of this limited interdiction; the fact that the law provides an expedient means to re-commit Miss Heard in the event of an emergency does not justify allowing her to make unsupervised housing decisions where the record so clearly reflects that insufficient guidance in this area would be against her best interests. Nor do we agree with Miss Heard's argument that the limited curator's control of her funds will be a sufficient check on any unwise housing decisions she might make. We find that the evidence supports the court's conclusion that the limited interdiction should include some necessary restrictions over Miss Heard's person to help her find and maintain appropriate housing arrangements.
However, we do find merit in Miss Heard's contention that by confining her options to "approved and accredited" supervised settings, the judgment is more restrictive than is necessitated by her demonstrated needs, and thus violates art. 389.1. The article directs the court to fashion a limited curatorship in the "least restrictive manner" consistent with the limited interdict's demonstrated incapacities. Here, the judgment does not clearly set out who would be responsible for approving a facility or by whom a facility must be accredited. In addition, the record reflects that Miss Heard could function well in a supportive family-like environment, which the instant judgment would apparently preclude. We further find the requirement of court approval, rather than simply the approval of the limited curator, before Miss Heard could relocate from one facility to another to be unnecessarily restrictive. We thus amend the contested paragraph to delete the unnecessarily restrictive language, in conformance with both the law and the evidence.

CONCLUSION
We find that reasonable attorney fees, incurred by Mrs. Fanny Heard in defending this litigation, may be taxed against Miss Heard's estate, and that a limited interdiction over Miss Heard's estate with some defined restrictions over her person is proper under the facts of this case. However, for the reasons expressed above, we modify the first full paragraph on page two of the judgment to read as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Central Louisiana State Hospital shall release Loraine Heard only to an appropriate supervised setting. Possible facilities include but are not limited to boarding homes, supported therapeutic group homes, halfway houses, or facilities providing a home- or family-like environment. The limited curator shall have the continuing duty and responsibility to ensure that Loraine Heard remains in a supervised environment.
Costs of this appeal are assessed against each party equally.
AMENDED, AND AS AMENDED, AFFIRMED.
HIGHTOWER, J., concurs with reasons.
HIGHTOWER, Judge, concurring.
I concur with the decision inasmuch as the limited curator is now left to make the decisions in question with respect to the interdict's care. However, it should be noted that Mrs. Heard, the curatrix, did not appeal to seek continuation of total interdiction, which arguably the evidence could well support. Moreover, in my view, LSA-C.C. art. 389.1 essentially seeks to provide for interdictions limited to the person or the estate, not "limited-limited" or hybrid interdictions.
NOTES
[1] Art. 389. Interdiction for mental incapacity

No person above the age of majority, who is subject to an habitual state of imbecility, insanity or madness, shall be allowed to take care of his own person and administer his estate, although such person shall, at times, appear to have the possession of his reason.
Art. 422. Interdiction for physical infirmity
Not only lunatics and idiots are liable to be interdicted, but likewise all persons who, owing to any infirmity, are incapable of taking care of their persons and administering their estates.
Such persons shall be placed under the care of a curator, who shall be appointed and shall administer in conformity with the rules contained in the present chapter.
[2] We believe our conclusion is consistent with the interpretation given this article by our colleagues on the third circuit in Interdiction of Goldsmith, infra. There the court concluded that article 389.1, unlike articles 389 and 422, did not require the moving party to show that the proposed interdict was both unable to care for his person and unable to administer his estate; a judgment of limited interdiction could be rendered upon proof of "either" one of these two incapacities plus a showing that interdiction was necessary. Although Mrs. Goldsmith was severly incapacitated physically, her mental acuity and ability to administer her estate were unimpaired. The court found that limited interdiction was unnecessary because Mrs. Goldsmith's physical needs were already being met. The court thus had no reason to reach the issue of whether the new article authorized a limited curatorship over both person and estate.