LINDSAY, Judge.
The respondent, F.T.E., appeals a trial court judgment ordering his estate to bear the cost of attorney fees and expenses incurred by the petitioner in connection with a limited interdiction. We amend and, as amended, affirm the trial court judgment.
FACTS
This case was previously before the court following the involuntary judicial commitment and interdiction of F.T.E. See Interdiction of F.T.E., 594 So.2d 480 (La.App.2d Cir.1992). F.T.E., who is in his mid-50’s, suffers from multiple sclerosis, a degenerative neurological disorder. He has been bedridden for more than 10 years, is totally incontinent, cannot bathe or turn in bed without assistance and has difficulty holding or dialing a telephone. He also has difficulty seeing to read. F.T.E. has sizea-ble financial holdings and, for many years, lived in his own home with the aid of round-the-clock sitters. He managed his own financial affairs. His mother, who has Alzheimer’s disease, also lived in the home. F.T.E.’s only other close relative is a brother, the petitioner, who lives in another state.
After a dispute with one of his regular sitters, F.T.E. was involuntarily admitted to Humana Hospital-Brentwood, pursuant to an emergency certificate issued under LSA-R.S. 28:53. F.T.E.’s brother then petitioned for judicial commitment and interdiction. F.T.E. was later transferred from *668 Brentwood to a nursing home. Following several hearings and numerous conferences in the trial court, judgments were entered committing F.T.E. to the nursing home and ordering an interdiction.
F.T.E. appealed the judgments of judicial commitment and interdiction. The matters were consolidated on appeal. The case was argued twice before this court. A divided five-judge panel found that the trial court erred in ordering the involuntary judicial commitment of F.T.E. and a full interdiction of his person and property.
The majority found that an involuntary judicial commitment was not proper in this case. Citing LSA-R.S. 28:55 E, this court stated that before a person may be subject to a judgment of civil commitment, the petitioner must show by clear and convincing proof that the respondent is dangerous to himself or others, or is gravely disabled as a result of mental illness. We found that although F.T.E. is severely disabled physically, he is not gravely disabled due to a serious mental illness, rendering him unable to survive safely in freedom and requiring care and treatment. We found that F.T.E. was able to provide for his physical needs through the use of sitters and nurses. Therefore, we reversed the judgment ordering involuntary commitment.
We also held that the trial court erred in imposing total interdiction on F.T.E. We found that, even though he is not physically able to attend to business matters, he is mentally able to do so, and could manage well with the help of agents. We found that F.T.E.’s holdings, which consist primarily of stocks and bonds, are particularly well suited to management through agents.
However, we held that F.T.E.’s inability to accept the fact that he suffers from multiple sclerosis and his occasional refusal to follow the orders of his physicians, required the limited interdiction of his person. Therefore, we modified the judgment of interdiction to provide for limited interdiction over the person, with appointment of a limited curator, and reversed that portion of the judgment calling for interdiction over F.T.E.’s financial affairs. The case was remanded to the trial court for an expedited evidentiary hearing to determine whether F.T.E.’s physical and mental condition had remained stable during the pen-dency of the proceedings. On remand, the trial court determined that there was no substantial change in the respondent’s condition.
In the prior appeal, F.T.E. challenged that part of the judgment awarding attorney fees to the petitioner in the interdiction and commitment proceedings. We found that although the reasons for judgment set forth by the trial court indicated that attorney fees would be assessed against F.T.E., no such award was made in the judgments appealed. Therefore, we held that the attorney fees had not been assessed against F.T.E.’s estate and the issue was not properly before the court on appeal.
On March 30, 1992, after our judgment of limited interdiction became final, the petitioner filed a motion for payment of attorney fees and expenses incurred during the course of the interdiction and commitment proceedings. The petitioner cited LSA-C.C. Art. 397 for the proposition that on every petition for interdiction, the costs shall be paid out of the estate of the defendant, if he is interdicted. The petitioner claimed that a total of $77,859.50 in attorney fees and $2,219.29 in expenses were incurred in connection with these proceedings.
A hearing on this issue was held on May 15, 1992. F.T.E. opposed the award of attorney fees and expenses, arguing that, on appeal, he was successful in obtaining a reversal on all issues except the interdiction, and that as to that issue, this court ordered only a limited interdiction over his person. He argued that under these circumstances, his estate should not be liable for the costs incurred by the petitioner, or at the most, that his estate should be liable only for a portion of the costs incurred.
On May 26, 1992, the trial court entered judgment, ordering the estate of F.T.E. to pay three-fourths of the attorney fees and all of the expenses incurred by the petitioner. The trial court found that, of the $77,- *669 859.50 in attorney fees requested by the petitioner, one-quarter of this amount was attributable to the commitment proceedings, and that the petitioner was not entitled to recover attorney fees in connection with that portion of the ease. However, the trial court did find that, in connection with the interdiction proceedings, the estate of F.T.E. was liable for the costs incurred by the petitioner. Therefore, the trial court ruled that the estate of F.T.E. was required to pay the petitioner three-fourths of the attorney fees. This amount equals $58,394.62. The court also found that the estate of F.T.E. was to pay all of the other costs and expenses incurred by the petitioner in connection with the proceedings. This amount totaled $2,219.29. The judgment rendered against F.T.E. ordered that he pay a total of $60,613.91.
F.T.E. appealed this judgment. On appeal, he argues that the trial court erred in finding that attorney fees are to be included as costs in an interdiction proceeding. He claims that such fees are not to be included unless specifically provided for by statute or contract, and that there is no such provision in the present case. F.T.E. also argues that the trial court erred in holding that he should pay three-fourths of the attorney fees incurred by the petitioner where, on appeal, F.T.E. was successful in having the interdiction modified to provide only for a limited interdiction over his person, and was successful in having the commitment completely overturned. He also argues in his brief to this court that requiring an interdict to pay the attorney fees of the petitioner in such a proceeding creates an unconstitutional “chilling effect” on the right to defend against the áction. F.T.E. further argues that the attorney fees sought to be recovered in this case are not reasonable. He points out that the judgment against him for $60,613.91 calls for the payment of a large percentage of his total estate valued at approximately $800,-000.
ATTORNEY FEES AS AN ELEMENT OF COSTS
F.T.E. argues that the trial court erred in finding that attorney fees were included as an element of costs in the interdiction proceeding. He contends that attorney fees are not recoverable unless specifically provided for by statute or contract and that the statutes providing for payment of costs in interdiction proceedings do not include attorney fees. These arguments are merit-less.
The respondent cites several cases for the proposition that attorney fees are not recoverable unless authorized by statute or contract. See State, Department of Transportation and Development v. Williamson, 597 So.2d 439 (La.1992); Huddleston v. Bossier Bank and Trust, 475 So.2d 1082 (La.1985), Effner v. Ketteringham, 47 So.2d 331 (La.1950). However, these cases do not deal with interdictions. The statutes and jurisprudence dealing with interdiction proceedings have established the rule that attorney fees are included as costs of an interdiction and are taxable against the estate of the interdict.
LSA-C.C. Art. 397 provides:
On every petition for interdiction, the costs shall be paid out of the estate of the defendant, if he shall be interdicted, and by the petitioner, if the interdiction prayed for shall not be pronounced.
LSA-C.C.P. Art. 4551 provides:
The costs of an interdiction proceeding shall be paid from the estate of the defendant, if a judgment of interdiction is rendered. If judgment is rendered in favor of the defendant, the court, in its discretion may tax the costs, or any part thereof, against any party.
The notion that the estate of the interdict is to be taxed with costs, including attorney fees, is not new. In re Leech, 12 So. 126 (La.1893), dealt with the issue of whether the community of an interdict or his separate estate bears the cost of the interdiction. The court stated that the community is primarily responsible for the fees of an attorney who prosecutes a suit and obtains a judgment of interdiction. If there is no community, the estate of the interdict is liable.
*670 In Doll v. Doll, 160 So.2d 323 (La.App. 4th Cir.1964), the court found that payment of attorney fees out of the estate of the interdict is merely indemnification in favor of the party who brought the interdiction proceedings and who would otherwise be personally obliged to pay the attorney he employed.
This court has previously ruled that attorney fees are an element of costs to be assessed in an interdiction proceeding. In Matter of Heard, 588 So.2d 799 (La.App.2d Cir.1991), the respondent, who had been interdicted for many years, brought suit to overturn the interdiction, an effort which was opposed by the curator. This court found that a limited interdiction was warranted and assessed attorney fees incurred by the curator against the estate of the limited interdict.
This court stated that the “[c]osts of an interdiction proceeding, including attorney fees, are assessed against the estate of the interdict if a judgment of interdiction is rendered; however, if the proposed interdict prevails, the court has discretion to tax any part of the litigation expenses against any party.” This court went on to state that where the judgment results in a limited interdiction, the court clearly has discretion to assess costs in the manner it considers most equitable.
The respondent in the present case argues that Matter of Heard, supra, is distinguishable from the instant case in that the curator in Heard had a duty to defend in good faith against the suit brought by the interdict to have the interdiction lifted. However, in light of the language in Matter of Heard, supra, and the prior jurisprudence indicating that a party who obtains a judgment of interdiction may recover attorney fees, we do not see the significance of the distinction. Therefore, we find that the trial court was correct in awarding fees to the petitioner in this suit which resulted in a limited interdiction of the respondent.
REASONABLENESS OF ATTORNEY FEE
The petitioner claims that $77,859.50 in attorney fees and $2,219.29 in expenses were incurred in connection with these proceedings and he sought to recover that amount. To the contrary, the respondent argues that the claimed amount of attorney fees and expenses is excessive, particularly where F.T.E. was ultimately successful in defeating all claims by the petitioner, except for the granting of a limited interdiction over his person.
The trial court found that one-quarter of the attorney fees were attributable to the judicial commitment proceedings for which the petitioner was not entitled to recover. Therefore, the trial court judgment awarded the sum of $58,394.62, amounting to three quarters of the total attorney fees incurred in connection with the proceedings. The trial court also awarded $2,219.29 in expenses.
At the hearing on the rule to assess attorney fees and costs, the petitioner presented evidence that lead counsel, Lawrence Jones, charged $150 per hour; co-counsel, Frederick Parker, Jr., charged $85 per hour until January 1, 1992, when his fee rose to $100 per hour; and the CPA who aided in inventorying the respondent’s property charged $50 per hour. Mr. Jones also testified that, because he was seriously ill at the beginning of the proceedings, he thought it necessary to enlist the aid of co-counsel in this case. Mr. Jones testified that 277 hours were expended in legal research and preparation of pleadings and briefs, 80.4 hours were spent attending hearings, 22 hours were spent in judicial conferences, 94 hours spent interviewing witnesses and 188 hours were expended in the administrative work of managing the assets. The evidence shows that 22 witnesses testified at trial, one original brief was prepared along with one reply brief and four briefs were submitted in response to motions and rules initiated by the respondent. Further, the attorney for the petitioner filed briefs and attended oral arguments in connection with the appeal of the case. A total of 661.4 hours were expended on behalf of the petitioner throughout the duration of the proceedings.
*671 In the trial court, the respondent did not offer any evidence that the time spent or the amount charged was unreasonable. Finding that the petitioner and his counsel were in good faith and their actions were justified, the court based its award upon the itemized statements submitted by the petitioner.
The trial court stated:
[I]t is my opinion that when this matter began, it was done in good faith, and if it had not begun at all, there would be no Limited Interdiction. Yet, how can you determine whether Limited Interdiction is necessary or full Interdiction until you’ve tried all the evidence. I think it took all that to find out where we were.... I still say that I think, even if they had completely lost the Interdiction, they might be entitled to a fee, depending on the circumstances.
On appeal, the respondent now argues that the fees charged by the petitioner’s lawyers were excessive. Based upon our review of the record, we find that this argument has merit.
Courts may inquire into the reasonableness of attorney fees as part of their prevailing, inherent authority to regulate the practice of law. State, Department of Transportation and Development v. Williamson, 597 So.2d 439 (La.1992). A fee is clearly excessive when it is so grossly out of proportion for fees charged for similar services by other attorneys in the locality, as to constitute an unquestionable abuse of the attorney’s professional responsibility to the public. Deselle v. Moreauville State Bank, 553 So.2d 1067 (La.App.3rd Cir.1989), writ denied 558 So.2d 584 (La.1990).
The Louisiana Rules of Professional Conduct, Rule 1.5(A) sets forth guidelines on attorney fees. The rule provides as follows:
(a) A lawyer’s fee shall be reasonable.
The factors to be considered in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.
Factors similar to these have been applied in determining whether the attorney fee in an interdiction case was excessive. See Succession of Smith, 330 So.2d 402 (La.App.3rd Cir.1976).
We do not question the fact that the petitioner and his attorneys were in good faith and acted in what they perceived to be the best interest of the respondent. The record reveals, and we recognize, that prolonged litigation was involved and the petitioner found it necessary to bring both judicial commitment and interdiction proceedings. A number of hearings and briefs were required, and it was necessary to administer the respondent’s sizeable estate during the pendency of the proceedings. However, even recognizing these factors, when evaluating this case according to the factors enumerated above, we find that the attorney fee award made by the trial court is excessive.
In this case, the petitioner’s attorneys charged in excess of $77,000 for work on the commitment and interdiction proceedings. Although the litigation was complex and consumed many hours over a long period of time, we find that the trial court abused its discretion in making the attorney fee award. Given the facts and circumstances of this case, we find that an award of $36,000.00 is reasonable for the *672 work performed by the attorneys in this case.
We note that the trial court awarded the petitioner all the expenses incurred in connection with the commitment and the interdiction, without subtracting one-fourth of the amount attributable to the commitment proceedings. On appeal, the respondent has not complained regarding the assessment of costs and expenses. Therefore, that issue is not properly before this court and the trial court ruling in this regard remains unaltered.
CONSTITUTIONALITY OF TAXING RESPONDENT WITH ATTORNEY FEES
Although not assigned as error, the respondent argues that “a rule of law which imposes upon a defendant in an initial interdiction the onerous prospect of bearing the expense of his own attorney and of the opposing party’s attorney, should he be assertive enough to defend against an effort to sentence him to ‘civil death’ constitutes such a burden on his right of access to the court system and to present a defense as to violate fundamental notions of fairness inherent in our constitutional concept of due process under the Louisiana and United States Constitutions.”
The respondent further argues that having to pay all costs, regardless of the outcome of the proceeding, has a “chilling effect” on the defendant’s ability to defend himself. He contends that a defendant in an interdiction proceeding would be compelled to consent to the demands of any relative or friend regardless of the remoteness of their relationship simply to avoid a significant percentage of his estate being consumed by litigation expenses. These arguments are meritless.
The scheme under which the defendant in an interdiction proceeding may be taxed with costs is set forth in LSA-C.C. Art. 397 and C.C.P. Art. 4551, quoted above. In order to attack the constitutionality of a statute, the issue must be specially pleaded to be considered by the court. Vaughn v. Department of Public Safety, 566 So.2d 1021 (La.App.3rd Cir.1990). The opponents who challenge the constitutionality of a statute bear the burden of proving clearly that a particular statute is barred by a constitutional provision. American Waste and Pollution Control v. State, Department of Environmental Quality, 588 So.2d 367 (La.1991).
A party questioning the constitutionality of an act must point to a specific provision of the constitution which clearly prohibits the legislative action. Moore v. Roemer, 567 So.2d 75 (La.1990). Statutes are presumed constitutional and any doubt is to be resolved in favor of the statute. State in the Interest of J.A.V., 558 So.2d 214 (La.1990).
The essential elements of “due process of law” are notice and an opportunity to be heard and to defend. Littleton v. Littleton, 514 So.2d 248 (La.App.5th Cir.1987).
F.T.E.’s constitutional attack in this case is vague. We note that he did not specially plead the unconstitutionality of the provisions allowing the costs of an interdiction to be taxed against a defendant in such proceedings. Therefore, any argument regarding the constitutionality of these provisions is not properly before this court.
However, we do not find that the respondent was deprived of due process of law. The respondent had an opportunity to be heard and to defend his position. Also, we do not find that the scheme for awarding costs in an interdiction creates a “chilling effect” on the right to defend against the action. The respondent argues that under the present provisions, the defendant in an interdiction proceeding risks being cast with costs regardless of the outcome of the proceedings and regardless of whether the proceedings were instituted in good or bad faith. We note that LSA-C.C. Art. 419 provides that:
He who petitions for the interdiction of any person and fails in obtaining such interdiction, may be prosecuted for and sentenced to pay damages, if he shall have acted from motives of interest or passion.
*673 We find that the respondent’s constitutional attack on the interdiction proceeding is without merit.
CONCLUSION
For the reasons stated above, we affirm the trial court judgment finding that the respondent, F.T.E., must bear a portion of the costs incurred by his brother, the petitioner, in this interdiction proceeding. However, we find that the fees incurred by the petitioner were excessive. We amend the trial court judgment and order that the respondent be cast with reasonable attorney fees incurred by the petitioner in connection with the interdiction proceeding in the amount of $36,000.00, together with expenses of $2,219.29. Judgment is recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that the respondent, F.T.E., pay $36,000.00 in attorney fees incurred by the petitioner in connection with the interdiction proceedings, and pay the expenses of $2,219.29, together with judicial interest thereon, beginning April 6, 1992 until paid in full. Further, the respondent is cast with the costs of the proceedings in this court.
AMENDED AND AFFIRMED.
BROWN, J., dissents and assigns written reasons.