ON REHEARING
BROWN, Judge.
In his early 50’s, F.T.E. had always competently managed his financial affairs and through sitters had provided for his and his mother’s physical needs. His elder brother, who lived out-of-state, had no communication with F.T.E. for several years before manifesting his concern by petitioning for his commitment and interdiction.
Initially F.T.E. was involuntarily removed from his home and confined pursuant to an emergency certificate issued in April 1990. Thereafter, continued confinement was erroneously ordered via a petition for interdiction. After speaking with F.T.E.’s court-appointed attorney, petitioner’s attorney realized the mistake and the order was vacated by joint motion as being unauthorized in interdiction proceedings. F.T.E.'s brother then moved for his judicial commitment. The commitment proceedings were heard first and consisted of several hearings beginning in May 1990 and ending in July 1990. The court ordered F.T.E.’s involuntary commitment but did not sign a written judgment to that effect until December 28, 1990.
Hearings on the interdiction petition were held on September 14 and October 8, 1990. The same trial judge heard both the commitment and interdiction evidence. On December 28, 1990, the trial court signed a judgment deeming total interdiction necessary. When F.T.E. sought a new trial in both proceedings, petitioner moved for consolidation because they involved the same facts. The cases were consolidated and a new trial was denied.
On appeal the judicial commitment was reversed and only a limited interdiction allowed. We remanded for implementation *675 of this court’s decision. In May 1992, after 25 months of involuntary confinement, F.T.E. was returned to his home and regained control over his finances. In the interim F.T.E.’s estate had paid for the cost of these proceedings and his confinement. Many of the stocks in his portfolio had been sold to fund these efforts. On remand the trial court ordered F.T.E.’s estate to pay attorney fees and expenses to petitioner in the amount of $60,613.91, a reduction from the $80,787.79 requested. This award has been appealed.
The trial court did not question the good faith of petitioner and his attorneys. We, however, have concerns about their indifference towards the cost of their efforts. According to petitioner’s testimony, he and F.T.E. inherited approximately $185,000 each. Petitioner testified that his estate is now worth about $50,000 while F.T.E.’s worth, at least at the start of these proceedings, had increased to more than $890,-000. Petitioner criticized F.T.E.’s financial acumen and stated that F.T.E. merely followed a conservative pattern established by their father. Petitioner did not believe F.T.E. was capable of managing his affairs.
Once the legal wheels were set into motion, no consideration was given by petitioner’s attorneys to the impact these proceedings would have on F.T.E. and his estate. At oral argument and in brief, petitioner’s attorneys believed their fees were collectable even if they would have consumed F.T.E.’s entire estate. We further note that F.T.E. was represented by a court-appointed attorney while his funds were controlled by petitioner and his attorneys.
At the hearing on the issue of attorney fees, Larry Jones, lead counsel for petitioner, testified, “I told Morris Evans [petitioner] when we started out it would probably cost about $5,000.” According to Jones, the legal fee exceeded $77,000 because of the actions of F.T.E.’s attorney. The record does not support this allegation. However, this statement embodies F.T.E.’s argument that an award of attorney fees to petitioner is incongruent with concepts of fairness and due process. Apparently, if F.T.E. had not contested petitioner’s efforts, the legal cost would only have been $5,000; however, because he resisted, petitioner believes F.T.E. is liable for more than $80,000 in costs. This belief is asserted even though F.T.E., represented by a court-appointed attorney, was successful in regaining control of his life.
In Matter of Heard, 588 So.2d 799 (La.App. 2d Cir.1991), this court ruled that costs of an interdiction proceeding, including attorney fees, are assessed against the estate of the interdict if a judgment of interdiction is rendered; however, if the proposed interdict prevails, it is within the court’s discretion to tax any part of the litigation expenses against any party. In this case the proposed interdict predominantly prevailed, (emphasis added). In Matter of Heard, this court addressed this type of circumstance, stating:
Where as here, the judgment resulted in a limited interdiction, the court clearly had discretion to assess costs in a manner it considered most equitable.
Matter of Heard, 588 So.2d at 802.
This appeal presents the issue of whether the trial court abused its discretion in assessing costs, including attorney fees, against the estate of F.T.E. and, if not, whether the amount fixed as attorney fees is unreasonable. We hold that to the limited extent that petitioner succeeded, a reasonable legal fee is due.[1]
The only real question in this case was factual. As pointed out by petitioner’s attorneys in their motion to consolidate, the factual issues were identical in both the commitment and the interdiction proceedings. The commitment hearings concluded before the interdiction trial started. Thus, from the inception of this matter until September 1990, the time spent by petitioner’s attorneys should be attributed to the commitment for which they concede that they are not entitled to recover fees from F.T.E.’s estate. Post-trial motions and *676 briefs also relate to the commitment question.
The record abounds with instances of unnecessary legal costs sought by petitioner’s attorneys. When this affair started in April of 1990,10 hours were spent by counsel for petitioner on the telephone before any pleadings were drafted. Telephone conferences and a preliminary draft of the petition for interdiction consumed another 16½ hours. After another 7 hours of conversations, the interdiction petition was finally filed. Comments from F.T.E.’s appointed attorney and nurse [another 6½ hours] led to a joint motion to vacate the order of interdiction because it erroneously confined F.T.E. when such confinement is unauthorized in an interdiction proceeding. Thereafter, petitioner filed for F.T.E.’s judicial commitment. The petition for interdiction was amended because it erroneously alleged that F.T.E. suffered from cerebral palsy when in fact he has multiple sclerosis [another 6½ hours]. In light of all of the time spent preparing the pleadings, it is interesting that F.T.E.’s physical condition was not properly alleged.
Petitioner’s law firm’s accountant spent an estimated 3172 hours in preparing an inventory of F.T.E.’s assets. Counsel spent an estimated 8¾ hours on this same inventory. However, this inventory consisted of copying the portfolio of stocks and bonds which were obtained from F.T.E.’s brokers. We note that time was also spent reviewing the contents of F.T.E.’s mother’s safety deposit box.
Two attorneys and an accountant were present for all hearings (including 5 days on the commitment). Eighty (80) hours were claimed for in-court time. Most of the evidence at the interdiction hearing was identical to the evidence in the previous judicial commitment hearings. Counsel’s post-trial brief allegedly consumed another 95 hours and 40 hours were spent replying to respondent’s post-trial brief. Forty-seven and one-half (47 ½) hours were spent opposing F.T.E.’s motion for a new trial and preparing a supporting memorandum. This new trial motion addressed both the commitment and interdiction proceedings; however, it is doubtful that the hours allegedly spent would have been shorter if only the commitment issue was involved. A total of 277 hours were claimed for research and pleadings.
The record is replete with further examples of the lack of concern shown by petitioner and his attorneys for the potential financial impact on F.T.E. and his estate. We further note that F.T.E.’s estate has already borne the financial burden of his 25 month confinement and the involuntary sale of many of his investments. Other than advancement of court costs, the expenses awarded petitioner from F.T.E.’s estate were related to postage, telephone, federal express, etc., incurred by petitioner and his attorneys. The majority of these expenses was connected to the several commitment hearings. Certainly F.T.E. has been burdened enough.
CONCLUSION
In summary, we decline to consider petitioner’s attorneys’ computerized time sheet showing 661.4 hours in our determination of the fee to be awarded in this case. This time sheet is unrealistic and not credible. At least sixty percent of petitioner’s attorneys’ time was spent in connection with the commitment proceedings, for which no fee is to be awarded. Although petitioner may have won a limited interdiction, the primary motive for the proceedings, control of F.T.E.'s financial affairs, was lost. The record does not demonstrate a need for two attorneys and an accountant; therefore, the fee awarded is to compensate one attorney to the extent of his limited success in conjunction with the interdiction proceeding, which transpired over a short period of two days. We further find that it is inequitable and borders on the absurd for petitioner and his attorneys to argue that the outrageous fee they are seeking is to be blamed on the vigorous efforts of F.T.E. and his court-appointed counsel.
Having found an abuse of discretion by the trial court in the amount assessed as costs, including attorney fees, against the estate of F.T.E., we reverse and render judgment setting the total attorney fees *677 and expenses owed by F.T.E.’s estate to petitioner at $12,500. All costs here and below are taxed to petitioner.
NORRIS, J., concurs with written reasons.
LINDSAY and HIGHTOWER, JJ., dissent with written reasons.

. Although believing the award of any legal fee to be an abuse of discretion, the writer joins to constitute a majority that believes a legal fee is justified to a limited extent, (emphasis added).