|2DALEY, Judge.
This is an appeal from a judgment ordering that visitation with the interdict, James “Jackie” Galmiche, be allowed with the interdict’s curatrix and sister, appellee herein, Mrs. Doris Nethery. The interdict lives in the home of appellants, Mr. and Mrs. Robert Wood. For the following reasons, we vacate the judgment of the trial court and remand this matter for proceedings consistent with this opinion.

FACTS:

James “Jackie” Galmiche, (hereinafter, Jackie), who was sixty-five years old at the time of this hearing, was born with limited mental capacity. He had never attempted to live on his own or to manage his own affairs. His mother managed his affairs until her death in 1971. Following her death, Jackie’s sister, Mrs. Doris Nethery, took over management of Jackie’s affairs. At some point, Mr. and Mrs. Robert Woods offered Jackie the opportunity of living in their home. Jackie adjusted |3well to living with the Woods and all parties are satisfied with this living arrangement. After living with the Woods for a few months, it became apparent to Mrs. Nethery that Jackie was spending more money than previously. In order to obtain more control over Jackie’s expenses, she brought an interdiction proceeding.
On September 7, 1995, judgment was rendered ordering that Jackie “be and he hereby is interdicted only insofar as his property, finances and business affairs.” The judgment named Mrs. Nethery as curatrix “over the property of’ Jackie, and named Kenneth C. Pailet, CPA as under curator. This judg *1245 ment also provided that all accounts and assets of the interdict, as well as all bills and expenses of Jackie, be turned over to Mrs. Nethery.
Mrs. Nethery apparently did not visit Jackie very often over the next year or so. On one occasion she went to the Wood home where Jackie was alone. She asked him to come with her for a few days. At some point during this visit, Mr. Wood returned home. He asked Mrs. Nethery to leave his home. At first Mrs. Nethery refused, but then Mr. Wood called the police. At this point, Mrs. Nethery left. On another occasion, Mrs. Nethery accompanied by a Jefferson Parish deputy attempted to visit her brother at the Wood home, but this was unsuccessful as Jackie did not come out of the house to visit with her.
On March 21, 1997, Mrs. Nethery filed a rule in proper person to establish visitation with her brother, Jackie. Mr. and Mrs. Robert Wood were served with this rule and a show cause hearing was set for April 10, 1997. On April 7, 1997, the Woods filed Exceptions of Lack of Personal Jurisdiction, Lack of Subject Matter Jurisdiction, No Cause of Action and No Right of Action. They also moved to dismiss the rule with prejudice. On the morning of the hearing, April 10, 1997, the Woods also moved for sanctions against Mrs. Nethery and her attorneys.
14Although Mrs. Nethery filed the rule in proper person, the attorney who handled the interdiction, Mr. Bruce Netterville, appeared to represent her at the hearing. Mr. Don Gardner who was named provisional curator during the interdiction proceedings also appeared at the hearing. He requested to be named provisional curator without compensation for the hearing. The court complied and Mr. Gardner was appointed provisional curator without compensation and allowed to participate in these proceedings.
At the hearing, the attorney for the Woods, Mr. Craig Hattier, argued that-the interdiction was only a partial interdiction in that Mr. Galmiche still maintained all of his civil rights to life and liberty, allowing him to visit or not visit whom ever he chooses. He argued that Jackie is afraid of his sister because she had tried to put him in a home. Mr. Hattier further argued that the interdiction did not give the Woods any custodial authority over. Mr. Galmiche, therefore, there was no cause of action for this rule. He also contended that the court had no jurisdiction over the Woods because they have no authority over Mr. Galmiche. He requested that the rule be dismissed with prejudice because Mrs. Nethery had no right to bring this rule against the Woods and that the rule should have been brought against Mr. Galmiche. Mr. Hattier asked for sanctions because the Woods were forced to incur attorneys fees and lost wages in order to defend this rule. The motions were denied.
Mrs. Nethery was called to the stand by her attorney. She explained that she visited her brother at the Wood home approximately ten months earlier. During that visit, she requested Jackie spend two days with her, explaining to Jackie that she would return him to the Wood home. Mrs. Nethery testified that Jackie agreed to this and went to get his personal supplies for the visit. Prior to departing, Mr. Wood told Jackie not to go with his sister. She denied any intention of putting Jackie in a home. 15She testified that the Woods were preventing her from seeing Jackie and that in her duties as curator, she would be better off seeing him and discussing matters with him. Mrs. Nethery further testified that someone was trying to convince Jackie that she was trying to do something to him. She stated that she was asking for an order to visit with her brother without interference from the Woods or anyone else.
On cross-exam, Mrs. Nethery denied that she tried to drag her brother out of the Wood house during the above described visit. She explained that she went to visit her brother at the Wood home with the deputies because she thought this would allow her to visit her brother. She stated that the deputies went up to the house and asked Jackie to come out of the house to visit with his sister. Jackie responded that he did not want to talk to his sister because “she is going to scream at me and fuss at me.” Mrs. Nethery denied that she had placed Jackie in an apartment and refused to allow him to go anywhere, causing him to consume excessive amounts of *1246 alcohol. She testified that the limited interdiction gives her authority over his property only and that she cannot tell Jackie where to go or what to do. Mrs. Nethery has no objection to her brother living with the Woods.
In response to questions by Mr. Gardner, Mrs. Nethery testified that since the limited interdiction she had not visited with her brother for any length of time. She stated that when she calls her brother at the Wood home, the Woods listen on the other phone. Mrs. Nethery explained that she was asking to see her brother for four hours a month in order to re-establish a relationship with Jackie.
Mr. Robert Wood was called to the stand by his attorney, Mr. Hattier. Mr. Wood explained that he was not granted any authority over Mr. Galmiehe by the September 7, 1995 interdiction judgment. He has no custodial authority over Mr. Galmiehe because Mr. Galmiehe is free to “see and do as he chooses because he is [6not interdicted over his person.” Mr. Wood described the visit by the deputies and testified that Jackie did not want to go with his sister. He described the visit by Mrs. Nethery in which he came home and discovered Mrs. Nethery trying to pull Jackie out of the home. Mr. Wood testified that he told Jackie he could leave with his sister if he wanted to, but Jackie did not want to. He asked Mrs. Nethery to leave several times. When she refused, he summoned the police. Mrs. Nethery left prior to the arrival of the police.
In response to Mr. Gardner’s questions, Mr. Wood testified that he would not interfere with Jackie visiting with his sister, if Jackie wanted to visit with his sister. He denied that Mrs. Nethery calls Jackie on the phone, and stated that Jackie only called his sister on one occasion when his check was late.
In response to Mr. Netterville’s questions, Mr. Wood testified that he did not have any problem with Jackie meeting with Mrs. Nethery and the curator (Mr. Gardner) at Mr. Gardner’s office, if Jackie did not mind doing so. He explained that this was up to Jackie because he is a “free man.”
On redirect, Mr. Wood stated that he did not think it was best for Jackie to visit with his sister.
On appeal, the Woods reassert many of the same arguments they made in the district court.
The Woods argue that the trial court erred in denying appellant’s Declinatory and Peremptory Exceptions, in issuing its judgment regarding visitation without having service of process on Mr. Galmiehe, in issuing a judgment in violation of established law concerning limited interdictions and visitation under Louisiana Civil Code Article 389.1 and Louisiana Code of Civil Procedure Article 2592(8), and in denying appellants Motion for Sanctions. In support of these assignments of error, |7the Woods contend that the prior interdiction proceedings established that Mr. Galmiehe was capable of caring for his own person and the interdiction was limited in that Mr: Galmiehe was interdicted only as far as his property, finances and business affairs. They contend that the Civil Code article 389.1, which allows for limited interdiction provides that the interdiction shall not deprive the interdicted person of any civil right, or any right pertaining to anything outside of the judgment of interdiction. In this ease since the judgment of interdiction is limited to those matters involving Mr. Galmiehe’s finances and property, they argue that Mrs. Nethery has no authority to bring this rule. Because Mr. Galmiehe has only a limited interdiction, he is free to visit with, consult with, and confer with anyone he chooses and/or refuse to visit or consult with anyone he chooses. They contend that since his civil rights as to life and liberty were not included in the interdiction, he retains these rights and a judgment infringing on these rights denies him equal protection of the law.
The Woods go on to argue that because the judgment of interdiction did not mention their being custodians of or curators over Mr. Galmiehe, Mrs. Nethery had no authority to file this rule against them. They contend that there was improper joinder of parties, since the Woods have never been given any custodial authority over Mr. Galmiehe. Finally, they argue that the trial judge should have granted the sanctions as re *1247 quested because this proceeding against the Woods was clearly designed for malicious reasons.
The Woods also argue that the judgment rendered in this ease was null and void since it was a proceeding concerning a person above the age of majority who maintains all of his civil rights, which was not in relation to the termination of a marriage and the deficiencies which exist in this ease can never be removed.
IgAppellants argue that the trial judge erred in appointing Mr. Gardner as provisional curator for Mr. Galmiche. They contend that the judgment of September 7,1995 terminated Mr. Gardner as curator. It is appellants’ position that a provisional curator can only be appointed by the court when the interdiction proceeding is pending. In this case the interdiction proceeding was concluded and there was no authority allowing the trial judge to provisionally appoint Mr. Gardner in this proceeding. MÍr. Gardner was clearly acting to facilitate the visitation between Mr. Galmiche and Mrs. Nethery and the Woods argue that this was in violation of Mr. Galmiehe’s constitutional civil rights.
Appellants argue that the trial court erred in the written reasons for judgment; contending that the judgment is in violation of Civil Code article 389.1, which limits any infringement upon Mr. Galmiche’s civil rights. They contend that this article is clear and unambiguous and it should have been applied in this case, since its application would not have led to any absurd consequences.
Appellee does not attempt to address each of appellants numerous arguments in her brief. She points out that her testimony revealed that she wants to visit with her brother without interference from the Woods and that it was her belief that the Woods were preventing her from doing so. Appel-lee argues that the trial judge heard testimony from her and Mr. Wood and decided that he was the most credible witness and granted her visitation. Appellee contends that it was Appellant who chose not to call Jackie to the stand, so they cannot now argue that the trial judge erred in rendering a judgment without hearing from Jackie.

DISCUSSION:

Louisiana Civil Code Article 389.1 provides:
When a person is declared incapable by reason of mental retardation, mental disability, or other infirmity under the provisions of Articles 389 or 422 of the Louisiana Civil Code, of caring for his own person or of administering his estate, a court of competent jurisdiction may appoint a limited curator to such person or his estate. Pending appointment of a limited curator, the court shall inquire into the specific abilities and disabilities of the incapacitated person and such limited curator shall have only those powers necessary to provide for the demonstrated needs of the incapacitated person. The powers, duties, .responsibilities, and any liabilities of the limited curator shall be specifically set forth in a judgment of limited interdiction.
The rights of the limited-interdict shall be infringed im the.least restrictive manner consistent with his incapacities. A judgment of limited interdiction shall not operate to deprive the incapacitated person of any civil right, the right to contract, or any right pertaining to any license, permit, privilege, or benefit unless specifically set forth in the judgment.
This statute has been interpreted to mean that the Court may allow limited interdiction, allowing a party maximum freedom in the least restrictive manner consistent with that party’s incapacity. Interdiction of Salzer, 482 So.2d 166, (La.App. 4th Cir.1986). This article authorizes the court to fashion a judgment “tailoring the limited euratorship to the demonstrated needs of the limited interdict after careful inquiry into his ‘specific abilities and disabilities.”’ In the Matter of Heard, 588 So.2d 799, (La.App. 2nd Cir.1991).
The Judgment of Interdiction rendered in this case is consistent with Article 389.1. The judgment merely states that Jackie is interdicted “only insofar as his property, finances and business affairs.” Therefore, appellants are correct in arguing that Jackie has not been interdicted as far as his person. The judgment does not grant custodial au *1248 thority over Jackie to anyone. The Woods are not mentioned in the judgment.
|10We find that the trial court erred in not granting the defendant’s Exception of No Cause of Action because as pled the plaintiff is not entitled to seek visitation through a noncustodial party. If the plaintiff feels the Woods are interfering with her ability to perform her duties as curatrix, she could seek appropriate injunctive relief against the Woods. In this instance Jackie Galmiche would not have to be named as a party to the suit. The other option available to Mrs. Nethery is to seek modification of the Judgment of Interdiction. If this route is chosen it will be necessary to include Jackie Gal-miche in the suit.
Appellant also appeals the trial court’s denial of sanctions. Based on the facts of this case we find no error in the trial court’s denying the defendant’s Motion for Sanctions and we likewise deny appellants Application for Sanctions filed with this court.
For the foregoing reasons, the judgment of the trial court is vacated. Costs to be paid by Appellee.
JUDGMENT VACATED; CASE REMANDED.